# Illinois Official Reports

## Appellate Court

***People v. Rankin*, 2015 IL App (1st) 133409**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN RANKIN, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-13-3409 |
| Filed | July 16, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-3233; the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Reversed in part and vacated in part; cause remanded with instructions. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Rebecca I. Levy, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Carol L. Gaines, and Justin R. Kordys, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Hall and Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a bench trial, the defendant, John Rankin, was convicted of residential burglary (720 ILCS 5/19-3(a) (West 2012)) and sentenced to 84 months' imprisonment to be followed by 3 years' mandatory supervised release (MSR). Additionally, the trial court imposed $549 in fines and costs and ordered the defendant to pay a $450 fee to reimburse the county for the funds expended for the services of his court-appointed defense counsel. On appeal, the defendant argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt and the trial court erred in imposing the $450 fee without holding a hearing to determine his ability to pay. For the reasons that follow, we: reverse the defendant's conviction and sentence for residential burglary along with the $549 of fines and costs assessed against him, vacate the $450 fee which the trial court ordered the defendant to pay to reimburse the county for the services rendered by his court-appointed counsel, and remand this cause to the trial court with instructions.

¶ 2 The defendant was arrested and charged by information with one count of residential burglary. The State filed a pretrial motion pursuant to section 113-3.1(a) of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/113-3.1(a) (West 2012)), seeking reimbursement for the county funds expended for the cost of the defendant's court-appointed attorney and requested that the motion be entered and continued. The defendant filed a pretrial motion to quash his arrest and suppress identification evidence based upon his arrest by the police without a warrant and without probable cause. The defendant waived his right to a jury trial and the trial court heard his motion to quash and suppress contemporaneously with the trial. The following evidence was adduced at the defendant's bench trial.

¶ 3 Patrick Mance lived in the basement apartment at 804 South Karlov Avenue in Chicago. The door to the apartment opened to a gangway located on the side of the building.

¶ 4 Mance testified that, on January 3, 2013, he went out with a friend after working from 12:30 to 9 p.m. at the Chicago Transit Authority. He stated that, on January 4, 2013, at about 3:30 or 4 a.m., he was riding as a passenger in a car driven by his friend when the car passed the building in which he lived. Mance testified that he saw the defendant in the gangway located on the side of the building carrying clothes. According to Mance, the lighting was good and he observed the defendant for a period of 4 to 5 seconds from 20 feet away. Mance testified that he had known the defendant all of his life. He stated that, after he saw the defendant, his friend kept driving because he "didn't think nothing of it."

¶ 5 Mance testified that, when he returned home at about 10 a.m., he found that the door to his apartment had been "pried open or kicked in." When he entered the apartment, he discovered that all of his clothes were missing, the kitchen had been "torn up," and pipes were missing from the ceiling. Mance stated that he called the police and they came to his apartment. When the police arrived, he told the officers that he had seen someone in the gangway, but he did not give the officers a description of the individual or inform them that it was the defendant that he had seen.

¶ 6 On cross-examination, Mance admitted that he did not see anyone enter his apartment on January 3 or 4, 2013. When asked if he saw the defendant walk out of his apartment, Mance answered: "I saw John Rankin coming out of my gangway at that time." When pressed for an

answer to the question of whether he saw anyone coming out of his apartment, Mance responded: "Yes, I did, because where my apartment is at it's only one way out."

¶ 7    On January 11, 2013, Mance was contacted by Detective Robert Goerlich concerning the incident. Mance admitted that he did not tell Detective Goerlich on that date that it was the defendant that he had seen in the gangway. According to Mance, he "was going to deal with the situation" himself. Detective Goerlich testified that, when he spoke to Mance on January 11, 2013, Mance did not tell him that he had seen the defendant in the gangway on the day of the burglary. Detective Goerlich stated that Mance told him that the offender was "unknown."

¶ 8    On January 21, 2013, Mance called Detective Goerlich and told him that the defendant was the individual who had broken into his apartment and gave the detective a description of the defendant. According to Mance, he decided to "let the police deal with it." Detective Goerlich testified that he constructed a photo array of possible suspects which included a picture of the defendant. On January 23, 2013, he showed the photo array to Mance and Mance identified the defendant's picture as the individual who had broken into his apartment. On January 25, 2013, Detective Goerlich issued an investigative alert for the defendant and, on January 30, 2013, the defendant was arrested.

¶ 9    After presenting the testimony of Mance and Detective Goerlich, the State rested and the trial court heard argument on the defendant's motion to quash and suppress. The court denied the motion, after which the defendant made a motion for a directed finding of not guilty, which the court also denied. Thereafter, the defendant rested.

¶ 10   Following closing argument, the trial court found the defendant guilty of residential burglary, stating:

> "I've listened to the evidence and observed the demeanor of the witnesses while testifying.
>
> Mr. Mance did give an explanation why he did not identify [the defendant] at the time that he reported the offense. But the other critical thing was [the defendant]–is there circumstantial evidence or direct evidence that [the defendant] was in the residence of Mr. Mance. As reviewed–the testimony just was reviewed by myself with our outstanding court reporter and it said he did see him coming out of the apartment.
>
> Based on the totality of the evidence and also circumstantial evidence I find there's a finding of guilty of residential burglary."

¶ 11   The defendant filed a motion for a new trial, which was denied. The trial court then sentenced the defendant to 84 months' incarceration to be followed by 3 years of MSR. Additionally, the court imposed $549 in fines against the defendant and ordered him to pay a $450 fee to reimburse Cook County for the funds it expended for the services rendered by his court-appointed defense counsel. As to the $450 fee, the court inquired of defense counsel: "How many times did you appear in the case?" The assistant public defender responded: "Nine times, judge." The court then stated: "Attorneys' fees of $450. Nine appearances plus a trial, that would be appropriate."

¶ 12   The defendant filed a motion to reconsider his sentence, which the trial court denied. This appeal followed.

¶ 13   The defendant first argues that the evidence was insufficient to prove him guilty of residential burglary beyond a reasonable doubt. He contends that the only evidence presented

by the State connecting him to the alleged burglary was "so incredible and lacking in logic and common sense that it cannot serve as proof of [his] *** guilt beyond a reasonable doubt."

¶ 14    In order to convict a criminal defendant, due process requires proof beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). It is the duty of the trier of fact to determine the credibility of the witnesses, to weigh the evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). We will not substitute our judgment for that of the trier of fact on issues involving the weight to be given to the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). However, "merely because the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of its decision." *People v. Ross*, 229 Ill. 2d 255, 272 (2008). A conviction will be reversed on appeal when the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt as to the defendant's guilt. *Id.*

¶ 15    The defendant was charged with the commission of residential burglary. As such, the State was required to prove beyond a reasonable doubt that he knowingly and without authority entered the dwelling of another with the intent to commit a felony or theft. 720 ILCS 5/19-3(a) (West 2012); *People v. Natal*, 368 Ill. App. 3d 262, 268 (2006). A conviction for the offense cannot be sustained unless all of the elements, including unlawful entry, have been proven beyond a reasonable doubt. *People v. Soznowski*, 22 Ill. 2d 540, 543 (1961).

¶ 16    In this case, the only evidence connecting the defendant to the offense charged was the testimony of Mance. Mance's testimony, viewed in a light most favorable to the State, established that between 3:30 and 4 a.m. on January 4, 2013, he saw the defendant carrying clothes while in a gangway on the side of the building in which Mance lived. The access to Mance's basement apartment was through a door opening into that gangway. Approximately six hours later, Mance returned to his apartment and found that the front door had been "pried open or kicked in" and that all of his clothes were missing, the kitchen had been "torn up," and pipes were missing from the ceiling. Contrary to the trial court's statement when pronouncing its finding of guilt, a fair reading of Mance's testimony is that he saw the defendant coming out of the gangway, not that he saw him come out of his apartment. Mance concluded that the defendant had come out of the apartment because the only way out of the apartment is through the gangway.

¶ 17    Mance did not testify that he recognized the clothes that he saw the defendant carrying as his. Although the police were called to the apartment on January 4, 2013, after Mance discovered the burglary, there was no evidence that the defendant's fingerprints were found at the scene. Nor was there evidence that any of the clothes taken from Mance's apartment were found in the defendant's possession. Mance testified that he had known the defendant all of his life and that he recognized him as the person that he saw coming out of the gangway carrying clothes in the early morning hours of January 4, 2013. Yet, he never told the officers who responded to his call on that day that it was the defendant who he had seen coming out of the gangway. Nor did he tell Detective Goerlich that he had seen the defendant when he was

interviewed on January 11, 2013. It was not until January 21, 2013, that Mance informed the police that he saw the defendant in the gangway carrying clothes.

¶ 18 Accepting as true, as the trial court did, that Mance did not inform the police until January 21, 2013, that it was the defendant that he had seen in the gangway on January 4, 2013, because he had decided to "deal with the situation" himself, we are still left with the fact that the only evidence even remotely connecting the defendant to the alleged burglary of Mance's apartment is Mance's uncorroborated testimony that he saw the defendant in the gangway carrying clothes after which he found that his apartment had been burglarized and his clothes stolen. In order to convict the defendant of residential burglary based on the evidence in this record, one would have to infer that the clothes that the defendant was carrying belonged to Mance and that the defendant had entered Mance's apartment and stolen the clothes. These inferences are mere speculation. There is no evidence in this record that the defendant ever entered Mance's apartment, that the clothes that he was seen carrying were Mance's clothes, or that the defendant stole any clothes from the apartment.

¶ 19 Although we draw all reasonable inferences from the evidence of record which are favorable to the State, we will not draw unreasonable or speculative inferences. *Cunningham*, 212 Ill. 2d at 280. Based upon the foregoing analysis, we conclude that the evidence of record is so unsatisfactory that it creates a reasonable doubt of the defendant's guilt. Accordingly, we reverse the defendant's conviction and sentence for residential burglary and the fines which were assessed against him.

¶ 20 Next, the defendant argues that the trial court erred in entering an order requiring him to pay a $450 fee for the services rendered by his court-appointed defense counsel without first conducting a hearing to consider his financial circumstance and ability to pay. See 725 ILCS 5/113-3.1(a) (West 2012); *People v. Gutierrez*, 2012 IL 111590, ¶ 17. He asserts that, because no hearing was held on the State's motion to assess fees for his court-appointed defense attorney within 90 days after the entry of the court's final order disposing of the case as required by section 113-3.1(a) of the Code of Criminal Procedure, the appropriate remedy is to vacate the $450 fee. The State concedes that the court failed to comply with the hearing requirements of section 113-3.1(a) for the reasons asserted by the defendant, but argues that the appropriate remedy is to remand the matter to the court with instructions to conduct an evidentiary hearing in compliance with the statute. See *People v. Somers*, 2013 IL 114054, ¶ 20. We agree with the State as to the appropriate remedy under the circumstances of this case.

¶ 21 Section 113-3.1(a), by its very terms, requires that, before ordering a defendant to reimburse the county for the cost of his court-appointed counsel, the trial court must hold a hearing within 90 days of a final judgment disposing of the case "to determine the amount of the payment." 725 ILCS 5/113-3.1(a) (West 2012). "The hearing must focus on the costs of representation, the defendant's financial circumstances, and the foreseeable ability of the defendant to pay." *Somers*, 2013 IL 114054, ¶ 14; see also *People v. Love*, 177 Ill. 2d 550, 563 (1997). As in *Somers*, the trial court in this case did hold an abbreviated hearing on the State's motion for the assessment of a fee for the defendant's court-appointed attorney when it asked the assistant public defender how many times that he had appeared in court. See *Somers*, 2013 IL 114054, ¶¶ 14-15. Only after hearing the assistant public defender's answer to the question did the trial court assess the $450 fee. Consequently, we agree with the State's contention that a hearing was held on the very day that the court sentenced the defendant. However, since the

hearing did not comply with the requirements of section 113-3.1(a), the appropriate remedy is to vacate the $450 fee and remand the matter back to the trial court with instructions to hold a hearing in compliance with the statute.

¶ 22        In summary, we: reverse the defendant's conviction and sentence for residential burglary along with the $549 of fines and costs assessed against him; vacate the $450 fee which the trial court ordered the defendant to pay to reimburse the county for the services rendered by his court-appointed counsel; and remand this cause to the trial court with instructions to hold a hearing in compliance with the provisions of section 113-3.1(a) of the Code of Criminal Procedure.

¶ 23        Reversed in part and vacated in part; cause remanded with instructions.