# Illinois Official Reports

## Appellate Court

---

***People v. Larry*, 2015 IL App (1st) 133664**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN LARRY, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-13-3664 |
| Filed | December 1, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-6817; the Hon. Evelyn B. Clay, Judge, presiding. |
| Judgment | Burglary conviction reversed; extended-term sentence affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Michael H. Orenstein, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Carol L. Gaines, and Katarina Durcova, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Pierce and Justice Simon concurred in the judgment and the opinion. |

**OPINION**

¶ 1     This case involves the application of Illinois's residential burglary statute to a defendant who was convicted of burglarizing his girlfriend's apartment which he claims was his residence too. Brian Larry raises three issues: (1) he could not enter "the dwelling place of another" as he actually resided with Shalonda Harris and therefore the State failed to prove an essential element of the criminal charge; (2) the trial court failed to recall Harris's testimony that Larry lived with her on the day he broke into her home and this prejudiced his case; and (3) his five-year extended-term sentence violates Illinois law because it attached to his domestic battery conviction, which was not the most serious offense of which he was convicted.

¶ 2     Regarding the first and second arguments, we find that at the time of the alleged offense Larry resided in the apartment and thus the evidence did not establish he entered "the dwelling of another." As a result of our decision, we affirm Larry's extended-term sentence.

## BACKGROUND

¶ 4     The State charged defendant Larry with residential burglary, theft, domestic battery, and criminal trespass to residence. After a bench trial, the trial court found Larry guilty on all charges. As to his theft conviction, the trial court granted Larry's motion for reconsideration of his guilty finding after the State later conceded that the value of the items taken was less than $500.

¶ 5     Larry and the complaining witness, Harris, were in a romantic relationship for three or four years. For that time, excluding stints in jail, Larry stayed with Harris at her first floor apartment on 7611 South Sangamon Street, Chicago. Larry did not have his own keys to the apartment; however, he had access to the apartment whenever he wanted through Harris, and had been at the apartment for months before March 16, 2013. Indeed, Harris testified that Larry "lived" in the apartment and left clothing there.

¶ 6     On the morning of March 16, 2013, Harris was in her bedroom when she heard tapping at her living room window. She ignored the sound. Minutes later, Larry called her. Harris told Larry not to return to the apartment and to send somebody to retrieve his clothing. She was upset because Larry did not spend the previous night with her. Despite Harris's rebuke, Larry told her that he would break through the window if she did not let him in.

¶ 7     Harris called 9-1-1 and an officer was dispatched. Before police arrived, Harris heard more tapping at the window. She investigated and saw Larry outside. Harris again called 9-1-1. While Harris was on the phone, Larry tore off the security bars on the living room window and smashed the window, gaining access to the apartment, but badly cutting his arm.

¶ 8     Once inside, Larry approached Harris and pulled her hair. As he moved to the rear of the apartment, Harris sought shelter with her upstairs neighbor. Minutes later, Harris saw Larry flee, carrying her desktop computer. Not long after, Chicago police stopped Larry nearby. He was bleeding and carrying a computer. Larry told officers he injured himself breaking a window during an argument. The officers called an ambulance. They gathered that Larry was the suspect at 7611 South Sangamon Street so while some officers followed Larry's ambulance, other officers returned the computer to Harris and took her statement.

¶ 9     Larry also gave a statement to detectives which largely corroborated Harris's story. Larry tried to get Harris's attention by tapping on the window. When she did not respond, he left and

called her house. Harris answered the phone, told Larry not to come back, and ended the relationship. Larry returned anyway, argued with Harris through the window, and shattered it with his fist. He then entered the apartment, snatched Harris's phone, and went to the rear. Before leaving, he grabbed Harris's computer and keys as well. Larry stated that he took the computer to "aggravate" Harris.

¶ 10   Harris testified that Larry lived with her and kept clothes there but never had his own set of keys. Larry did not testify. He argued that because he lived with Harris, he could not be guilty of residential burglary.

¶ 11   The trial court held Larry guilty of residential burglary (Class 1 felony) (720 ILCS 5/19-3 (West 2012)), domestic battery (Class 4 felony) (720 ILCS 5/12-3.2 (West 2012)), and criminal trespass to residence (Class 4 felony) (720 ILCS 5/19-4 (West 2012)). The trial court found Harris's testimony credible but concluded that Larry did not live in Harris's apartment because he never had keys to the apartment and had to break in through the window. The trial court sentenced Larry to five years' imprisonment for residential burglary. 730 ILCS 5/5-4.5-30 (West 2012). Because of his history of domestic violence, the trial court sentenced him to an extended five-year sentence for domestic battery under section 5-8-2 of the Unified Code of Corrections. 730 ILCS 5/5-8-2 (West 2012). The criminal trespass to residence conviction merged with domestic battery.

¶ 12   ANALYSIS

¶ 13   Larry asks us to reverse his residential burglary conviction as the State failed to prove that he entered "the dwelling place of another," as required under the Illinois residential burglary statute. 720 ILCS 5/19-3 (West 2012).

¶ 14   The question of whether Larry entered the apartment "of another" is a mixed question of law and fact. We first review the statute *de novo* (*People v. Giraud*, 2012 IL 113116, ¶ 6) and then apply our analysis of the statute to the State's evidence to determine whether, when viewed in the light most favorable to the prosecution, any rational trier of fact could find all the elements of the crime proven beyond a reasonable doubt (*Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Due process requires that the State prove each element of the offense beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)), and that burden never shifts from the State. *People v. Diaz*, 377 Ill. App. 3d 339, 345 (2007). For a conviction of the offense of residential burglary, the State must prove beyond a reasonable doubt that defendant "knowingly and without authority entered the *dwelling of another* with the intent to commit a felony or theft." (Emphasis added.) *People v. Rankin*, 2015 IL App (1st) 133409, ¶ 15 (citing *People v. Natal*, 368 Ill. App. 3d 262, 268 (2006)).

¶ 15   Finally, while we must carefully examine the evidence, we give the proper deference to the trial court who saw the witnesses testify. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). But "merely because the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of its decision." *People v. Ross*, 229 Ill. 2d 255, 272 (2008). We will not overturn a conviction unless the evidence is so improbable, implausible, or unsatisfactory that it creates a reasonable doubt of guilt. *Rankin*, 2015 IL App (1st) 133409, ¶ 14.

¶ 16   Section 19-3(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/19-3(a) (West 2012)) provides that "[a] person commits residential burglary when he or she knowingly and without

authority enters *** the dwelling place of another *** with the intent to commit therein a felony or theft." Of the elements of the offense, defendant contends Harris's "dwelling place" was also his "dwelling place," and not that "of another," as the law requires. Section 2-6 of the Code provides: "For the purposes of Section 19-3 of this Code, 'dwelling' means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants *actually reside* or in their absence intend within a reasonable period of time to reside." (Emphasis added.) 720 ILCS 5/2-6 (West 2012). Significantly, the statute includes occupants as well as owners so property interests do not come into play, and no evidence was offered at trial regarding the nature of Harris's interest in the property or Larry's lack thereof. Nor did the parties' briefs refer to property interests. Given the unambiguous language of "dwelling," it would be absurd to conclude that under section 19-3(a), individuals who "actually reside" at the time of the offense at the "dwelling place" could be excluded for purposes of the clause "of another" in the same statute. In other words, by definition, "dwelling place" is not "of another," where the defendant actually resides there.

¶ 17    The State points to the singular fact that Larry had no key to the apartment, and therefore, it avers that he did not actually reside at the apartment. The State argues that Larry could not come and go as he pleased but depended on Harris to grant him access. Larry counters that "one who lacks a key can dwell in a home," citing *People v. Bell*, 403 Ill. App. 3d 398 (2010). In *Bell*, the Fourth District found the defendant's girlfriend who lived with him had actual authority to consent to a search of his home, even though she had no key and he had told her during the argument that led to police presence that he wanted her to move out. The trial court's grant of defendant's motion to suppress the evidence obtained in a search of his bedroom was reversed because "possession of a key is not automatically indicative of mutual use or joint access of property for purposes of actual common authority." *Bell*, 403 Ill. App. 3d at 407.

¶ 18    Harris admitted that Larry lived with her at the apartment for a number of years (except for stints in jail), including March 16, and he had clothing there. Moreover, it was not uncommon for Harris to either lend Larry her keys for a time or allow him into the apartment before she left. Harris testified that Larry had not come "home" the night before so when he called she was upset and told him not to return and send someone to get his belongings. As recognized in *Bell*, the possession of a key to an apartment should not be considered as "automatically indicative" of one's status. Sometimes individuals have a key to a dwelling in which they do not actually reside (a friend or a neighbor, for instance) and sometimes individuals do not have a key to a dwelling in which they do actually reside (family members or a long-term romantic partner as here).

¶ 19    Further, there is a lack of proof in that the State presented no evidence of either a lease or who paid the rent. We cannot assume that Larry did not pay any rent, or even that his name was not on a lease without proof in the trial record. The false logic that absence of evidence is evidence of absence is a pitfall we must avoid.

¶ 20    Citing *People v. Mitchell*, 152 Ill. 2d 274 (1992), *People v. Bowie*, 36 Ill. App. 3d 177 (1976), and *People v. Williams*, 2013 IL App (1st) 111116, Larry complains about the trial court's recall, but essentially argues the same point as he did in his first argument, *i.e.*, that he could not have committed a residential burglary to the dwelling where he actually resides. Larry's defense relied on his statement to the police that he lived with Harris and her testimony that she lived with him. The State argues, and the trial court found that Larry did not "live"

with Harris because he broke a window to get into the apartment. But this evidence does not prove the court's point that he did not live there–people do sometimes break into their homes by breaking a window or a lock because, for example, they are locked out for whatever reason. Rather, the manner of entry would in theory demonstrate Larry entered without authority, a non-issue in this appeal.

¶ 21 Without proof beyond a reasonable doubt of all the elements, a conviction for the offense cannot be sustained. *Rankin*, 2015 IL App (1st) 133409, ¶ 15. After reviewing the record and hearing oral arguments, we find the State failed to present sufficient evidence to establish beyond a reasonable doubt that Larry was other than an occupant actually residing at the apartment with Harris and that the apartment was "of another." Therefore, we reverse his residential burglary conviction.

¶ 22                           Extended-Term Sentence

¶ 23 Finally, Larry argues that his extended-term sentence violates section 5-8-2 of the Unified Code of Corrections (730 ILCS 5/5-8-2 (West 2012)). The trial court's decision to sentence Larry to an extended term for domestic battery involves a question of law which we review *de novo*. *People v. Thompson*, 209 Ill. 2d 19, 22 (2004). The Illinois Supreme Court has interpreted section 5-8-2(a) to mean that a trial court can impose an extended-term sentence only for the conviction of the most serious class of offense. *People v. Poole*, 2012 IL App (4th) 101017, ¶ 13 (citing *People v. Bell*, 196 Ill. 2d 343, 350 (2001)). Due to his history of domestic violence, the trial court sentenced Larry to an extended, five-year term for domestic battery, a Class 4 felony. The trial court, however, also convicted Larry of Class 1 residential burglary and sentenced him to five years. Larry claims, and the State concedes, that this would violate Illinois's extended-term sentencing statute (730 ILCS 5/5-8-2(a) (West 2012)). As we reverse Larry's residential burglary conviction, however, the trial court's extended-term sentence for Larry's Class 4 conviction remains in effect as the basis for Larry's challenge no longer exists.

¶ 24                              CONCLUSION

¶ 25 Burglary conviction reversed; extended-term sentence affirmed.