# Illinois Official Reports

## Appellate Court

---

### *People v. White*, 2016 IL App (2d) 140479

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROEL WHITE, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-0479 |
| Filed | August 1, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-CF-995; the Hon. Blanche Hill Fawell, Judge, presiding. |
| Judgment | Affirmed as modified. |
| Counsel on Appeal | Thomas A. Lilien and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa A. Hoffman and Sean P. Kinsella, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Presiding Justice Schostok and Justice McLaren concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Roel White, met Aldo Grano in jail. When Grano was later released from prison, the two men contacted each other. During one of their conversations, defendant and Grano made arrangements for Grano to buy a gun from defendant. After defendant obtained the gun, he and his girlfriend, Stephanie Morales, were on their way to Addison to deliver the gun to Grano when the police stopped defendant for a traffic offense. Defendant fled from the police on foot, and Morales drove away, contacting Grano while doing so. Morales and Grano made arrangements to meet at a different location in Addison, Morales went to that location, and she sold the gun to Grano. Morales then went home and gave the money she got from Grano to defendant. Based on these facts, the trial court found defendant guilty of unlawful sale of a firearm to a felon (720 ILCS 5/24-3(A)(d) (West 2012)), under an accountability theory, and being an armed habitual criminal (720 ILCS 5/24-1.7(a)(1) (West 2012)), which were charged in the same indictment. Defendant was sentenced to an extended term of 8 years for unlawful sale of a firearm to a felon, a Class 3 felony (see 720 ILCS 5/24-3(C)(9) (West 2012); 730 ILCS 5/5-8-2(a) (West 2012)), and a concurrent term of 12 years for being an armed habitual criminal, a Class X felony (see 720 ILCS 5/24-1.7(b) (West 2012)). On appeal, defendant claims that he was not proved guilty beyond a reasonable doubt of unlawful sale of a firearm to a felon, because (a) no evidence established that he was accountable for Morales's action of actually selling the gun, and, in the alternative, (b) if he can be held accountable, he cannot be convicted of that offense in the absence of evidence establishing that Morales knew that Grano was a felon. Defendant also argues that, if his conviction of unlawful sale of a firearm to a felon is proper, his eight-year sentence for that offense must be reduced, as the extended term was improper in light of the fact that he also was convicted of a Class X felony. For the reasons that follow, we determine that defendant was proved guilty beyond a reasonable doubt of unlawful sale of a firearm to a felon, but we agree that defendant's sentence for that offense must be reduced. Accordingly, we affirm as modified.

¶ 2                                      I. BACKGROUND

¶ 3    Grano, who had several prior convictions of various offenses including some felonies, testified that he was in jail for an aggravated battery charge in July 2010 when he met defendant, who was also a convicted felon. For the next three months, Grano and defendant would talk to each other. Grano told defendant that he was going to plead guilty to the aggravated battery charge and would be going to prison.

¶ 4    In March 2012, after Grano was released from prison, he contacted the police and the Bureau of Alcohol, Tobacco, and Firearms, because he wanted to work as an informant for them and help get unregistered guns and illegal drugs off the streets. Pursuant to this arrangement, Grano exchanged a series of text messages with defendant on October 14, 2012, during which defendant offered to sell Grano a shotgun for $250. Grano, after receiving instructions from the Addison police department, agreed to meet defendant at a specific location in Addison the next day.

¶ 5    Morales, who testified against defendant in exchange for the State reducing the charges brought against her, stated that she was defendant's girlfriend, that she was living with him in October 2012, and that she had known him for a couple of years. On October 15, 2012, defendant told Morales that "he was going to sell a gun" and that he was going to sell the gun

- 2 -

"to Aldo." Morales believed that defendant was referring to Grano, whom she had known for three to five years. Grano was a "friend's friend [from] where we used to hang out at" in Addison. On cross-examination, Morales testified that she and Grano "were friends, I guess."

¶ 6 After defendant told Morales about selling a gun to Grano, he drove Morales's car to Rockford to get the gun. When defendant returned, he told Morales to get herself and defendant's two-year-old son ready, as they all were going to drive to Addison. Morales testified that defendant was driving her car, while she was seated in the passenger seat and defendant's son was in a car seat in the back, when the police stopped defendant. At that point, defendant told Morales that the gun was under the hood.

¶ 7 Officer Langhenry testified that he was on duty in Hanover Park at approximately 1:28 p.m. when he stopped the vehicle defendant was driving. Based on the fact that defendant was moving around in the car, Langhenry asked defendant to exit the vehicle so that he could perform a pat-down search. During that search, Langhenry discovered cannabis in defendant's left pants pocket and another object in the right pocket. When Langhenry asked defendant about the object in the right pocket, defendant grabbed the pocket and struggled with Langhenry. Defendant eventually broke free and ran from the scene, motioning to Morales to leave.[1] Morales moved to the driver's seat and drove off with defendant's son.

¶ 8 After leaving the scene, Morales immediately called Grano on defendant's cell phone. Grano, who testified that he had known Morales for seven years and recognized her voice, asked her "if she had the gun *** if we were still going to buy [sic] the gun." That is, Grano inquired whether "the deal [was] still going to go down." Grano stated that, although he made the deal with defendant, Morales "was just *** delivering me the gun."

¶ 9 Morales testified that she told Grano, whose voice she recognized, "[t]hat [defendant] got—we got pulled over and [defendant] took off so where did he want to meet." According to Grano, Morales asked him to drive to Barrington, where she was, but he said no, because it was too far away. Eventually, they agreed to meet at a new location in Addison.

¶ 10 Morales then called Brenda White, defendant's mother. Morales told Brenda that "[defendant] was going to sell a gun but he ended up getting pulled over and he left." Morales informed Brenda that she had "[defendant's son] in the car with the gun." Pursuant to the arrangements Morales made with Brenda, Brenda met up with Morales, and they lifted the hood of the car and found the gun. The women wrapped the gun up, put the gun in Brenda's truck, and, with defendant's son,[2] drove to the new location in Addison. Although Morales stated that she was concerned for her safety and could have gone home after defendant fled, she further testified that she arranged to drive Brenda's truck because she believed that the police knew the car she had been in with defendant and she didn't want the police to pull her over in that car, with the gun and defendant's son in the car.

¶ 11 Once at the new location, the women gave the gun to Grano, and Grano gave Morales $250. After talking about what had happened to defendant, Brenda took Morales and defendant's son home.

---

[1] At trial, Morales "took her hand, put it at eye level in front of her face, and moved it away from her face about a foot several times, indicating the motions given to her by defendant."

[2] The evidence also revealed that Brenda's boyfriend was with them.

¶ 12    While Morales and Brenda met with Grano, Langhenry apprehended defendant, took him to the Hanover Park police department, and questioned him. Defendant told Langhenry that he ran because he did not want to be charged with possession of cannabis. Defendant never told Langhenry anything about the gun he had planned to sell to Grano that day, and Langhenry never saw a gun in defendant's possession.

¶ 13    After defendant was released, he went home. Morales, who was at home when defendant arrived, stated that "[defendant] just told me like what happened and I told him like I went on with what happened and then I just gave [defendant] the money and that was it."

¶ 14    The next day, Grano had a conversation with defendant about the gun. Grano asked defendant if the gun worked and if defendant had bullets for it. Defendant assured Grano that the gun did work, and he told Grano that he was going to look for the bullets.

¶ 15    The trial court found defendant guilty of unlawful sale of a firearm to a felon and being an armed habitual criminal. In doing so, the court noted that defendant "is the one who initiated the deal *** followed it all the way through to the end when he actually took the $250.00." The court sentenced defendant, and he timely appealed without having challenged his conviction or sentence.

¶ 16                                    II. ANALYSIS

¶ 17    Defendant essentially raises three issues on appeal. First, he argues that he was not proved guilty beyond a reasonable doubt of unlawful sale of a firearm to a felon because no evidence established that he was accountable for Morales selling the gun to Grano. Second, defendant claims that, even if he was accountable for Morales's actions, the State still failed to prove him guilty of that offense beyond a reasonable doubt, as no evidence established that Morales knew that Grano was a felon, a necessary element of that offense. Last, defendant contends that, if he was proved guilty beyond a reasonable doubt of unlawful sale of a firearm to a felon, his eight-year extended-term sentence for that offense must be reduced to five years, because an extended-term sentence is appropriate on only the most serious class of offense and here, in addition to unlawful sale of a firearm to a felon, a Class 3 felony (see 720 ILCS 5/24-3(C)(9) (West 2012)), defendant was also convicted of being an armed habitual criminal, a Class X felony (see 720 ILCS 5/24-1.7(b) (West 2012)). We consider each issue in turn.

¶ 18                                 A. Reasonable Doubt

¶ 19    The first issue we address is whether defendant was proved guilty beyond a reasonable doubt of unlawful sale of a firearm to a felon. We note that the parties disagree about what standard of review should apply. Citing *People v. Chirchirillo*, 393 Ill. App. 3d 916, 921 (2009), defendant argues that our review is *de novo* because at issue is whether the uncontested facts are sufficient to prove the statutory elements under an accountability theory. *Id.* The State claims that we should consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant guilty beyond a reasonable doubt. See *People v. Fernandez*, 2014 IL 115527, ¶ 13. We need not decide here which standard should apply because, under either standard, we determine that defendant was proved guilty beyond a reasonable doubt.

## 1. Accountability

Section 5-2(c) of the Criminal Code of 2012 (720 ILCS 5/5-2(c) (West 2012)) provides that a person is legally accountable for the criminal actions of another if "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense." Our supreme court recently reiterated "that the underlying intent of this statute is to incorporate the principle of the common-design rule." *Fernandez*, 2014 IL 115527, ¶ 13. Accordingly, to prove a defendant guilty under an accountability theory, the State needs to establish that either (1) the defendant and the principal shared the same criminal intent or (2) there was a common criminal design. *Id.*; see also 720 ILCS 5/5-2(c) (West 2012).

Pursuant to the common-design rule, if " 'two or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the design or agreement and all are equally responsible for the consequences of the further acts.' " *Fernandez*, 2014 IL 115527, ¶ 13 (quoting *In re W.C.*, 167 Ill. 2d 307, 337 (1995)). Moreover, " '[e]vidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that [the defendant] shared the common purpose and will sustain his conviction for an offense committed by another.' " *Id.* (quoting *W.C.*, 167 Ill. 2d at 338).

Under this rubric, we conclude that defendant was accountable for Morales's act of physically delivering the gun to Grano in return for $250. Specifically, the evidence revealed that defendant planned to sell the gun to Grano. Defendant and Grano, whom defendant knew from jail, had a conversation during which they reached an agreement about the price of the gun, when defendant would sell the gun to Grano, and where the men would meet for the sale.

After making these arrangements, defendant told Morales that he was going to sell a gun to Grano. Defendant asked Morales if he could use her car to go retrieve the gun, Morales consented, and defendant drove to Rockford to get the gun. When he returned, he told Morales to get herself and his son ready because they were going to Addison. Morales, knowing that defendant made this plan to sell the gun to Grano, whom she knew from Addison, complied.

When the group was on its way to Addison in Morales's car, the police stopped defendant. At that very moment, defendant, who knew that he had cannabis in his pocket, told Morales that the gun was under the hood. Although the reason why defendant chose to tell Morales this at that very moment is unknown, a very plausible reason is that defendant wanted Morales to complete the sale. In further support of this theory is the fact that defendant, who retrieved the gun without Morales's help yet had her accompany him to the sale, motioned to Morales to leave the scene and then he took off running from the police. Although Morales testified that, at that point, she was concerned about her and defendant's son's safety, her actions suggest something different. Instead of, for example, alerting the police, going home, or throwing the gun away, Morales left the scene and contacted Grano. After explaining the situation to him, she asked him "where did he want to meet." No terms other than the location of the sale were altered.

Once Grano gave Morales the $250 that Grano agreed to pay defendant for the gun, she went home, told defendant what happened, and gave defendant the money. The next day, when defendant talked to Grano, defendant assured him that the gun worked and told Grano that he would look for the ammunition.

¶ 27    From these facts, it may be inferred that there was a common design to sell the gun to Grano. Defendant made all of the arrangements for the sale, and, after he was prevented from personally delivering the gun to Grano, Morales executed the plan for him. This planning on defendant's part makes him accountable for unlawful sale of a firearm to a felon. See *People v. Taylor*, 164 Ill. 2d 131, 140 (1995) ("[A]ctive participation has never been a requirement for the imposition of criminal guilt under an accountability theory."); *People v. McComb*, 312 Ill. App. 3d 589, 593 (2000) (in armed-robbery case, court observed that "one may aid and abet without actively participating in the overt criminal act"). Thus, defendant was properly found guilty of unlawful sale of a firearm to a felon under an accountability theory, as he and Morales certainly aided each other in the commission of the crime.

¶ 28    In reaching this conclusion, we note, as the State indicates, that courts have considered numerous factors in determining whether a defendant can be accountable for the acts of another. For example, in *Taylor*, our supreme court mentioned that courts may consider whether the defendant (1) was present during the perpetration of the offense, (2) maintained a close affiliation with his companions after the commission of the crime, (3) failed to report the crime, (4) fled from the scene, and (5) voluntarily attached himself to a group bent on illegal acts with knowledge of the group's criminal plans. *Taylor*, 164 Ill. 2d at 141; see also *People v. Griffin*, 247 Ill. App. 3d 1, 7 (1993) (citing factors mentioned in *Taylor* and noting that courts may consider, in addition, whether (1) the defendant accepted "illegal proceeds from the actual perpetrators which the [defendant] knew did not belong to that person" and (2) there was a "subsequent concealment or destruction of evidence").

¶ 29    Here, although we do not believe that these factors amount to a test to be uniformly applied in accountability cases, which are fact-specific, we nevertheless find that a consideration of these factors supports the conclusion that defendant is accountable for Morales's act of physically selling the gun to Grano. Specifically, while it is true that some of the factors are lacking here, as they are inapplicable to what transpired, we note that defendant went home to Morales after she sold the gun to Grano, he failed to report the crime to police even though he easily could have done so once he was apprehended, he accepted the $250 Morales received from Grano for the gun, he confirmed the sale by phone the next day, and he told Grano that he would try to obtain ammunition for the gun.

¶ 30    Defendant argues that he and Morales did not share a common design to sell the gun to Grano. Rather, he claims, "[his] actions consisted of his telling [Morales] what he planned to do, not in asking that she assist him in carrying out those plans." Put another way, defendant argues that he "could not be held accountable for [Morales's] conduct because it was not conduct that he had requested or solicited." We find defendant's argument untenable.

¶ 31    First, one can be held accountable for the conduct of another based on more than just a request to perform or a solicitation of specific acts. Indeed, one can be held accountable for the actions of another when he "aids, abets, agrees, or attempts to aid" another in the "planning" of an act. 720 ILCS 5/5-2(c) (West 2012). Here, defendant certainly aided Morales in selling the gun when he made arrangements to sell Grano the gun for $250 in Addison on the afternoon of October 15, 2012, and drove to Rockford to retrieve the gun.

¶ 32    Second, just as in a conspiracy, evidence of participation in a common criminal design is not necessarily explicit. See *McComb*, 312 Ill. App. 3d at 593 ("Words of agreement to commit the offense are not required to establish a common purpose or design."); see also *People v. Gates*, 29 Ill. 2d 586, 590 (1963) ("To establish a conspiracy there must be a common design;

a concert of will and endeavor on the part of two or more persons with a view to attaining the same unlawful object."). Rather, given its clandestine nature, a common design may be broadly inferred from the surrounding circumstances. See *People v. Garth*, 353 Ill. App. 3d 108, 121 (2004). Here, as noted above, the broad inference to draw from the surrounding circumstances is that defendant enlisted Morales's help in carrying out the plan to sell the gun to Grano by having Morales deliver the gun to Grano when defendant could not do so personally. Although defendant never explicitly asked Morales to deliver the gun to Grano, the surrounding circumstances certainly indicate that that is precisely what defendant wanted Morales to do. That is, the evidence reveals not only that Morales was aware of the fact that defendant was going to sell a gun to Grano, but also that Morales accompanied defendant on his trip to Addison, was told about the location of the gun after the police stopped defendant, was advised by defendant to leave the scene of the stop, called Grano to ask him not whether but where they were going to meet, delivered the gun to Grano, and then gave defendant the money she received for the gun.

¶ 33    In his reply brief, defendant argues that he cannot be accountable for Morales's conduct because he was not present when Morales sold the gun to Grano. Such a contention is completely unsupportable. As noted above, it is well settled that an accomplice's presence at the scene of the crime is not a prerequisite to finding the accomplice guilty. See 720 ILCS 5/5-2(c) (West 2012); see also *People v. Carrizales*, 240 Ill. App. 3d 893, 901 (1992) (active participation in overt act not required for accomplice to be held accountable); *People v. Stevens*, 98 Ill. App. 3d 158, 160-61 (1981) (same); *People v. Dandridge*, 79 Ill. App. 3d 693, 695 (1979) (same).

¶ 34                                 2. Knowledge of Grano's Status as a Felon

¶ 35    Having determined that the evidence supported the conclusion that defendant was accountable for Morales's delivering the gun to Grano, we next address whether the evidence revealed that Morales knew that Grano was a felon. " 'A charge based on accountability must necessarily flow from the principal crime at issue.' " *Chirchirillo*, 393 Ill. App. 3d at 922 (quoting *People v. Hicks*, 181 Ill. 2d 541, 547 (1998)). As relevant here, in order to prove defendant guilty of unlawful sale of a firearm to a felon, the State had to prove beyond a reasonable doubt that defendant, or one for whose conduct he is accountable, knowingly sold or gave any firearm to any person who had been convicted of a felony in Illinois or any other jurisdiction. 720 ILCS 5/5-2(c), 24-3(A)(d) (West 2012).

¶ 36    Here, the parties do not dispute that a firearm was sold to Grano and that Grano was a convicted felon. Defendant argues that, because the evidence did not establish that Morales knew that Grano was a felon, Morales did not unlawfully sell a firearm to a felon and, as a result, defendant cannot be vicariously liable for that offense.

¶ 37    "Knowledge of a material fact includes awareness of the substantial probability that the fact exists." 720 ILCS 5/4-5(a) (West 2012). In assessing whether a person acted with knowledge, we note that an individual need not admit that he or she acted with knowledge. See *People v. Lind*, 307 Ill. App. 3d 727, 735 (1999). Rather, whether a person acted with knowledge may be inferred from circumstantial evidence. *People v. Hall*, 273 Ill. App. 3d 838, 842 (1995). Circumstantial evidence is proof of certain facts and circumstances from which the trier of fact may infer other connected facts that human experience dictates usually and reasonably follow. *People v. Grathler*, 368 Ill. App. 3d 802, 808 (2006). Here, the inference to

- 7 -

draw from the evidence is that defendant knew that Grano was a felon. While in jail, defendant was made aware of the fact that Grano was a felon and that he was sentenced to prison. In his reply brief, defendant characterizes Morales's relationship with Grano as that of mere acquaintances and argues that, given that relationship, one cannot infer that Morales knew that Grano was a convicted felon. The glaring problem with defendant's position is that the State is not required to prove that Morales knew that Grano was a convicted felon, but rather that defendant knew Grano's status and merely acted through Morales as the delivery person.

¶ 38    Defendant relies on *Chirchirillo*. In *Chirchirillo*, the defendant, a felon, broke into a home with her friend, who was not a felon, to steal a gun. *Chirchirillo*, 393 Ill. App. 3d at 918. The defendant was convicted of, among other things, unlawful possession of a weapon by a felon even though she never possessed the stolen gun. *Id.* at 918-19. The defendant appealed, arguing that she could not be convicted of that offense under an accountability theory. *Id.* at 921. This court agreed. *Id.* at 925-26. We noted that, "[b]ecause the felony status of the person possessing the weapon is an element of unlawful possession of a weapon by a felon, the State, in order to establish that [the] defendant was accountable for unlawful possession of a weapon by a felon, had to prove that [the defendant's friend] possessed the weapon, that [the friend] was a convicted felon, and that [the] defendant aided, abetted, or agreed or attempted to aid [the friend] in the planning or commission of that offense." *Id.* Because the State never established that the friend was a felon, the defendant could not be vicariously liable for unlawful possession of a weapon by a felon. *Id.* at 925.

¶ 39    Here, unlike in *Chirchirillo*, the felony status of the person selling the gun, *i.e.*, Morales, is not at issue. Rather, what matters here is the felony status of the person to whom Morales sold the gun, *i.e.*, Grano. Regardless of who sold the gun, Grano's felony status did not change. Thus, unlawful sale of a firearm to a felon was committed, whether defendant or Morales personally delivered the gun to Grano. *Cf. Griffin*, 247 Ill. App. 3d at 15 (noting that there are some offenses, like aggravated criminal sexual assault based on the age of the perpetrator, where one cannot be accountable for the conduct of the perpetrator, as "the status of the person accused *** is particularly important"). Of course, that is true only as long as the person who sold the gun knew that Grano was a felon. Here, because, as noted above, the inference to draw from the evidence is that defendant knew that Grano was a felon, he committed the offense of unlawful sale of a firearm to a felon by aiding Morales in committing the offense by making the arrangements for the sale and directing her to complete the transaction in his absence.

¶ 40                                    B. Extended-Term Sentence

¶ 41    Because we conclude that defendant was proved guilty beyond a reasonable doubt of unlawful sale of a firearm to a felon under an accountability theory, we must address whether defendant's eight-year extended-term sentence for that offense was improper. Before addressing that issue, we note that defendant never challenged this sentence in the trial court. Recognizing this fact, defendant, citing *People v. Thompson*, 209 Ill. 2d 19, 22 (2004), claims that this court may consider the issue because his sentence is void and void sentences may be challenged at any time and in any court. In response, the State observes that, pursuant to *People v. Castleberry*, 2015 IL 116916, ¶ 19, an improper sentence is no longer void. Thus, after *Castleberry*, a defendant can forfeit a claim that his sentence is improper and he may have his sentence reviewed only if he satisfies the requirements of the plain-error rule. See *People v.*

*Hillier*, 237 Ill. 2d 539, 545 (2010) (outlining requirements of plain-error rule in sentencing context); *People v. Ramirez*, 2015 IL App (1st) 130022, ¶ 21 (same).

¶ 42　　Here, defendant does not make a plain-error argument, let alone invoke the rule. Ordinarily, the failure to do so results in the forfeiture of the defendant's claim on appeal. See *Ramirez*, 2015 IL App (1st) 130022, ¶ 22. Nevertheless, because the State concedes error on this point, we will consider the argument. See *People v. Buffkin*, 2016 IL App (2d) 140792, ¶ 11 (confession of error permits review of otherwise precluded claim).

¶ 43　　As noted, at issue is whether the imposition of the extended-term sentence of 8 years on the Class 3 felony of unlawful sale of a firearm to a felon (720 ILCS 5/24-3(A)(d), (C)(9) (West 2012)) was proper when defendant was also sentenced to 12 years on the Class X felony of being an armed habitual criminal (720 ILCS 5/24-1.7(a)(1), (b) (West 2012)). Because this issue raises a question of law, our review is *de novo*. *People v. Larry*, 2015 IL App (1st) 133664, ¶ 23.

¶ 44　　Section 5-8-2 of the Unified Code of Corrections (730 ILCS 5/5-8-2 (West 2012)) outlines when extended-term sentences may be imposed. As relevant here, section 5-8-2(a) provides:

> "A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Article 4.5 of Chapter V for an offense or offenses within the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in Section 5-5-3.2 or clause (a)(1)(b) of Section 5-8-1 were found to be present." 730 ILCS 5/5-8-2(a) (West 2012).

¶ 45　　Our supreme court has interpreted section 5-8-2(a) to mean that a trial court may impose an extended-term sentence only for the conviction of the most serious class of offense. *People v. Bell*, 196 Ill. 2d 343, 350 (2001). However, extended-term sentences may be imposed "on separately charged, differing class offenses that arise from unrelated courses of conduct." *People v. Coleman*, 166 Ill. 2d 247, 257 (1995).

¶ 46　　Here, defendant was charged in one indictment with both unlawful sale of a firearm to a felon and being an armed habitual criminal. Both offenses arose out of defendant's obtaining a gun and making arrangements with Grano to sell the gun to him. Accordingly, an extended-term sentence here would be appropriate only if it were imposed on the Class X felony of being an armed habitual criminal. Because the extended-term sentence was imposed not on this Class X felony but on the Class 3 felony of unlawful sale of a firearm to a felon, we, pursuant to Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967), reduce that sentence to the maximum nonextended term of five years.[3] See 730 ILCS 5/5-4.5-40(a) (West 2012).

¶ 47　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 48　　For these reasons, we affirm defendant's conviction of unlawful sale of a firearm to a felon, but we reduce the extended-term sentence imposed on that conviction to a nonextended term of five years.

¶ 49　　Affirmed as modified.

---

[3]We note that the parties agree that the maximum nonextended term of five years should be imposed.