2024 IL App (1st) 230119-U

No. 1-23-0119

Order filed December 30, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 7559 |
| | ) | |
| MARCO ZAVALA, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction where the evidence at trial was sufficient to support defendant's guilt under an accountability theory, and the circuit court properly admitted video evidence of gang activity.

¶ 2    Defendant Marco Zavala appeals his conviction after a bench trial of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2018)), attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2018)), and aggravated discharge of a firearm at an occupied vehicle (720 ILCS 5/24-1.2(a)(2) (West 2018)) under an accountability theory based on the actions of his co-defendant, Bryant Mitchell. The circuit court concluded that defendant retrieved a gun for Mitchell

and assisted him in tracking the vehicle at which Mitchell then fired, killing a bystander. The court sentenced defendant to 51 years' imprisonment. We affirmed Mitchell's conviction in a separate appeal. *People v. Bryant Mitchell*, 2024 IL App (1st) 230118-U.

¶ 3 Defendant raises two issues on appeal: (1) was the evidence sufficient to prove that defendant intended to aid Mitchell beyond a reasonable doubt because the court relied too heavily on low-quality surveillance video and defendant's membership in the Satan Disciples gang, and (2) did the circuit court abuse its discretion in admitting other-crimes evidence, namely, video footage depicting defendant's interaction with customers of a nearby smoke shop? For the reasons below, we affirm.

¶ 4 I. BACKGROUND

¶ 5 On April 26, 2019, at approximately 6 p.m., Raymond Mangan drove with Bryan Ocampo and Isaiah Rivera to a Wing Stop restaurant located in Chicago at 59th Street and Kedzie Avenue to sell cannabis to a friend. Mangan drove Rivera's silver Chrysler. Once parked, Mangan saw Mitchell and another man, later identified at trial as defendant, enter the parking lot. They stared at Mangan, and when they reached the middle of the lot, Mitchell displayed a crown-shaped hand signal that Mangan recognized as a gang sign. No words were exchanged, and Mangan did not return the sign. The men then walked down an alley.

¶ 6 Mangan was a member of the Latin Kings and had gang tattoos on his left arm, hand, and shoulder. He did not recognize Mitchell or defendant, and he knew that the area was becoming Satan Disciples' territory. He had a bad feeling and decided to leave. Traffic was backed up southbound on Kedzie, so he turned north, intending to circle the block and proceed westbound on 59th Street. As he drove, Mangan saw the men from the parking lot running through alleys.

Mangan then had to stop at a red light at the intersection of 59th and Kedzie. He heard multiple gunshots and ran the red light. When he pulled over, he saw a bullet hole in the rear window of his vehicle.

¶ 7    Inside a Metro PCS store across 59th and Kedzie, a sales representative was assisting a customer, Candace Dickerson, who was there with her two young sons to purchase a new phone. Gunfire rang out, and Dickerson was struck by a bullet and killed.

¶ 8    Police arrested both Mitchell and defendant just over a week later. Defendant was charged with first degree murder (720 ILCS 5/9-1(a)(1), (2)), attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1)), and aggravated discharge of a firearm at an occupied vehicle (720 ILCS 5/24-1.2(a)(2)). Prior to trial, the State moved to admit multiple pieces of gang evidence, including, as relevant here, surveillance video from inside a smoke shop just before the shooting. The court admitted the video over defendant's objection.

¶ 9    Videos from neighboring businesses showed defendant's movements with Mitchell and a man identified as Carlos Gonzalez, who was not charged, in the minutes leading up to the shooting. Cameras also captured Mitchell shooting a firearm toward the intersection. Multiple witnesses, including Raymond Mangan, the Metro PCS sales representative, Dickerson's son, and CPD personnel testified to provide context and identifications with respect to the videos.

¶ 10    Ultimately, the circuit court found defendant guilty under an accountability theory of first degree murder of Dickerson, the attempted first degree murder of Ocampo, Rivera, and Mangan, and aggravated discharge of a firearm. Specifically, the circuit court concluded that defendant had approached Mangan with Mitchell, then retrieved a gun and helped Mitchell pursue the vehicle before handing the gun to Mitchell just before he shot at the car. The circuit court denied

defendant's post-trial motion, and this timely appeal followed. Ill. S. Ct. R. 606(b) (eff. Apr. 15, 2024).

¶ 11                                                II. ANALYSIS

¶ 12                                    A. Sufficiency of the Evidence

¶ 13    On appeal, defendant argues that due to the low quality of the surveillance footage, the State did not establish that defendant handed Mitchell a gun such that he intended to aid Mitchell. Defendant also asserts that his shared membership with Mitchell in the Satan Disciples gang did not establish his guilt under an accountability theory.

¶ 14    At the outset, the parties disagree on the standard of review. Defendant argues that *de novo* review applies. The State asserts that we must apply the typical sufficiency of the evidence standard. Here, live testimony was offered to establish defendant's role in the shooting, and so the proper inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 15    We do not retry the defendant when reviewing a challenge to the sufficiency of the evidence. *People v. Nere*, 2018 IL 122566, ¶ 69. It is the role of the trier of fact "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *People v. Williams*, 193 Ill. 2d 306, 338 (2000). The trier of fact need not "disregard inferences that flow normally from the evidence before it," or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. We will not reverse a conviction

unless the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 16    "A person is legally accountable for the conduct of another" when "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense." 720 ILCS 5/5-2(c) (West 2018). A defendant possesses the intent to promote or facilitate the crime where (1) "the defendant share[s] the criminal intent of the principal," or (2) "there [is] a common criminal design." *People v. Fernandez*, 2014 IL 115527, ¶ 13. "Unless the accomplice *intends* to aid the commission of a crime, no guilt will attach." (Emphasis in original.) *People v. Shaw*, 186 Ill. 2d 301, 322 (1998).

¶ 17    The trier of fact can infer a common criminal design from the circumstances surrounding the commission of an act by the group. *People v. Cerda*, 2021 IL App (1st) 171433, ¶ 75; *People v. White*, 2016 IL App (2d) 140479, ¶ 32 ("[G]iven its clandestine nature, a common design may be broadly inferred from the surrounding circumstances."). Evidence that the defendant "voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another." (Internal quotation marks omitted.) *Fernandez*, 2014 IL 115527, ¶ 13. " '[W]ith knowledge of its design' means only" that the defendant knew "that the group intended to engage in criminal behavior of some kind—nothing more specific is required." *People v. Jackson*, 2020 IL App (4th) 170036, ¶ 49.

¶ 18    When determining accountability, the trier of fact may consider "a defendant's presence during the commission of the crime, continued close association with other offenders after its

commission, failure to report the crime, and flight from the scene." *People v. Mulosmani*, 2022 IL App (1st) 200635, ¶ 66. However, "[c]onsent to the commission of the crime, or mere knowledge of it, is insufficient to constitute aiding or abetting." *People v. Johnson*, 2014 IL App (1st) 122459-B, ¶ 132.

¶ 19    At trial, the State produced significant evidence against defendant. Chicago police sergeant Juan Perez testified that gang members identify themselves with specifically colored clothing, hand signals, and tattoos, and that photographs of defendant's tattoos indicated membership in the Satan Disciples. Chicago police officer Arnulfo Yanez offered an in-court identification of defendant and Mitchell and testified that he had been familiar with defendant since 2017, had interacted with him 5 to 10 times, and that defendant was a Satan Disciple, as was Mitchell.

¶ 20    Perez also testified that the Satan Disciples maintained territory around 5900 South Kedzie Avenue and that the rival gang Latin Kings maintained territory "a little bit" further north of that area. Sergeant Perez testified that gang members engaged in "[c]hecking," where a gang member "throw[s]" a gang sign at a second person and, if that person refuses to return any sign, the gang member asks to see whether they have tattoos or a firearm around their waistband. On cross-examination, Perez confirmed that a person might "false flag" another person to see if they are a member of an opposing gang. The Satan Disciples' gang sign resembles a pitchfork, and the Latin Kings' gang sign resembles a crown.

¶ 21    Multiple surveillance videos shown at trial depict defendant visiting two neighboring businesses with Mitchell and Gonzalez, displaying hand signals, and searching or examining individuals' torsos. One video depicts the group entering a restaurant, approaching two men at a table, exchanging handshakes with them, and then exiting. The pocket of Mitchell's sweatshirt

appears flat, as does defendant's. [Ex. 19, 5:20:03 – 5:21:08]

¶ 22    They then enter a smoke shop across the street, where two young men stand at the counter. The two men try to leave, but defendant stands in front of them at the door. Mitchell and Gonzalez then step closer to the two men. The two young men make hand gestures, Mitchell lifts one of their shirts, and the other of the two men lifts his own shirt. All five men exit the shop. [Ex. 16, 6:18:35 – 6:19:13]

¶ 23    Defendant and Mitchell then approach the vehicle in which Mangan, Rivera, and Ocampo sit in the strip mall parking lot. Mitchell raises his hand toward the vehicle, and the group moves toward an alley. [Ex. 19, 5:23:20 – 5:23:45] Mangan testified that Mitchell flashed a gang sign in the shape of a crown at the vehicle.

¶ 24    After the interaction with Mangan, additional video shows defendant separate from the group. He runs up the alley and out of sight in the direction of what a Chicago police detective testified was defendant's girlfriend's apartment. [Ex. 17, 16:19:47 – end] While he is gone, Mitchell remains in the parking lot near the vehicle. [Ex. 19, 5:23:56 – 5:24:54] Around a minute later, defendant jogs back toward the others. As he approaches to reunite with Mitchell and Gonzalez, a camera captures defendant from the front and up close. His hands are pressed into his hoodie pocket. He removes his right hand, and there is a bulge in his pocket. [Ex. 17, 16:19:47 – end]

¶ 25    Mangan then drives the Chrysler out of the parking lot onto Kedzie to circle the block and emerge heading westbound on 59th Street. After the car pulls out, defendant and the group stand facing Kedzie for a few moments before running back up the alley. [Ex. 19, 5:24:34 – 5:24:55] They reach the point where the alley intersects with Troy Street and mill around for a short period

of time, looking in all directions. They then sprint toward 59th Street. As they run, Mitchell reaches back toward defendant, and defendant reaches out in front of him toward Mitchell. [Ex. 42, beginning at 6:22:46; note that video takes a time jump once the group runs off-screen, but if you continue to the end of the video there is a zoomed-in version of the relevant footage of the hand-off]. The group then turns onto 59th Street, where Mitchell proceeds immediately up the street and begins firing at the Chrysler at the intersection. After the shooting, Mitchell and defendant flee in the same direction. [Ex. 15, 5:28:51 – end]

¶ 26    Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could determine that the State proved defendant's guilt under an accountability theory beyond a reasonable doubt. See *McLaurin*, 2020 IL 124563, ¶ 22. The State's live testimony and video evidence established that, just before the shooting occurred, defendant walked near the scene with Mitchell and Gonzalez flashing gang signs at people and preventing customers from leaving a store until the group could examine them. This supported a reasonable inference that they were "checking" the gang affiliations of individuals who were in the territory of their street gang, the Satan Disciples.

¶ 27    While defendant argues that the circuit court relied solely on defendant's gang membership in holding him accountable for Mitchell's actions, the evidence against defendant did not end there. After encountering a member of a rival gang in the silver Chrysler, defendant separated from the group, disappeared in the direction of his girlfriend's house, and returned with a bulge in his pocket that was not there before. He helped locate the Chrysler once it left the parking lot and pursued it with Mitchell, handing him something en route. Moments later, Mitchell fired at the car, missing it but killing Candice Dickerson. Defendant's actions in attaching himself to Mitchell and

Gonzalez were voluntary, and once the group came across the Chrysler and began to pursue it, they were clearly bent on harming its occupants—an illegal act. *Fernandez*, 2014 IL 115527, ¶ 13; *People v. Rebollar-Vergara*, 2019 IL App (2d) 140871, ¶ 105 *as modified on denial of reh'g* (June 10, 2019).

¶ 28    It is true, as defendant points out, that defendant's knowledge of the group's design is not explicitly expressed by defendant on the videos and can only be inferred. But that does not render the evidence insufficient. "[J]ust as in a conspiracy, evidence of participation in a common criminal design is not necessarily explicit." *White*, 2016 IL App (2d) 140479, ¶ 32. No words of agreement are necessary. *Cerda*, 2021 IL App (1st) 171433, ¶ 75. The circuit court could reasonably infer that defendant knew that violence would a be a "probable consequence" of assisting Mitchell in confronting the Chrysler containing a rival gang member, pursuing the car, and handing Mitchell a gun. *People v. Flynn*, 2012 IL App (1st) 103687, ¶ 23 (one becomes legally accountable for the acts of another when he attaches himself to a group bent on illegal acts "which will probably or necessarily require the use of force and violence") (quoting *People v. Morgan*, 39 Ill. App. 3d 588, 597 (1976)). Further, the evidence presented at trial established each of the remaining factors that this court has identified to support a finding of guilt under an accountability theory, as defendant was present when the shooting occurred, fled from the scene, continued association with Mitchell after the shooting, and did not report the incident. See *Mulosmani*, 2022 IL App (1st) 200635, ¶ 66.

¶ 29    On this point, defendant argues that the evidence was insufficient because the videos are too blurry to make out precisely what defendant handed Mitchell, and there is no physical evidence or testimony to establish that the object was a gun. However, "it is not necessary that the trier of fact find each fact in the chain of circumstances beyond a reasonable doubt." *Jackson*, 2020 IL

124112 ¶ 70. Instead, "the trier of fact must find only that the evidence *taken together* supports a finding of the defendant's guilt beyond a reasonable doubt." (Emphasis added.) *Id.*

¶ 30 The circuit court inferred that the object was a gun based on the size of the object in defendant's pocket and the fact that defendant and Mitchell targeted a vehicle while on foot, necessitating a weapon like a gun rather than a billy club, taser, or other object offered as alternatives by defendant's trial counsel. The circuit court also relied on the sequence of events: defendant assisted Mitchell in intimidating and "checking" people in the restaurant and the smoke shop, defendant approached Mangan in the parking lot alongside Mitchell, defendant disappeared and reappeared with an object in his pocket, defendant worked alongside Mitchell to locate the vehicle, and defendant joined in the pursuit of the vehicle with Mitchell during which he handed off an object to Mitchell. Mitchell only *then* fired upon the vehicle despite having stood within feet of it in the parking lot for around a minute while defendant ran toward his girlfriend's house and back.

¶ 31 The fact that, as defendant argues, one could speculate as to what defendant handed Mitchell does not render the outcome here so improbable as to create a reasonable doubt, *Bradford*, 2016 IL 118674, ¶ 12, particularly where the trier of fact was not required to "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 2020 IL 124112, ¶ 70.

¶ 32 Finally, defendant contends that the circuit court must have considered evidence from Mitchell's trial, at which Mitchell testified that defendant gave him a firearm, or that the circuit court was "psychologically primed" to see a firearm in the video evidence based on Mitchell's trial. However, we "must presume the trial judge considered only competent evidence, unless that

presumption is rebutted by affirmative evidence in the record." (Internal quotation marks omitted.) *People v. Heard*, 2021 IL App (1st) 192062, ¶ 19. Here, there is no indication in the record that the circuit court improperly considered any evidence, and the evidence it did consider was sufficient to show that defendant acted in a common criminal design with Mitchell.

¶ 33                                    B. Other-Crimes Evidence

¶ 34    Defendant next contends that the circuit court erred in allowing into evidence the video captured inside the smoke shop because it constituted inadmissible other-crimes evidence under Illinois Rule of Evidence 404. See Ill. Evid. Rule 404(b) (eff. Jan. 1, 2011) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith ***.").

¶ 35    Prior to trial, the State moved to admit the smoke shop video, alongside several other pieces of evidence, as evidence of defendant's gang affiliation. Defendant argued that evidence of his gang affiliation was overly prejudicial and irrelevant. The court ultimately admitted the smoke shop video. In his posttrial motion, defendant did not expressly identify the smoke shop video but did generally argue that the court improperly allowed "irrelevant and highly prejudicial" gang evidence at trial.

¶ 36    Now, on appeal, defendant argues for the first time that the smoke shop video was inadmissible other-crimes evidence. However, defendant has failed to preserve his challenge to the smoke shop video as other-crimes evidence, as he never raised the objection before the circuit court. See *People v. Denson*, 2014 IL 116231, ¶ 11 (a criminal defendant "preserves an issue for review by (1) raising it in either a motion *in limine* or contemporaneous trial objection, and (2) including it in the posttrial motion"). Moreover, defendant failed to raise in his opening brief any

argument that we may excuse the forfeiture and review the issue on the merits. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in the opening brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). He also did not invoke plain error review in his reply brief. See *People v. Williams*, 193 Ill. 2d 306, 348 (2000) (recognizing that plain error may be raised in a reply brief to avoid forfeiture).

¶ 37    To the extent that defendant seeks to challenge the admissibility of the smoke shop video on the basis for which it was admitted and considered, *i.e.*, that he was the member of a gang, we conclude that the video was properly admitted. "Gang membership evidence is admissible only when there is sufficient proof that the membership is related to the crime charged." *People v. Villarreal*, 198 Ill. 2d 209, 232 (2001). "[O]nce such a relationship is shown, such evidence may be admitted so long as it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect." *Id.* One purpose for which gang evidence is admissible is to provide a motive for an otherwise inexplicable act. *Id.* We review evidentiary rulings regarding gang-related evidence for abuse of discretion. *People v. Johnson*, 208 Ill. 2d 53, 102 (2003).

¶ 38    The smoke shop video showed defendant, Mitchell, and Gonzalez stopping two customers inside the shop and exchanging gang signs with them shortly before the shooting occurred. Ultimately, this video, along with the other evidence of defendant's gang membership and activity just before the shooting, was relevant to show there was a common design between defendant and Mitchell, as it indicated they were essentially patrolling the Satan Disciples territory together and confronting individuals to ascertain their gang membership. Where there was otherwise no ascertainable motive for Mitchell to shoot at Mangan, the circuit court did not abuse its discretion in admitting the video captured inside the smoke shop as it demonstrated a common criminal

design or scheme and provided necessary context for an otherwise inexplicable act. *People v. Woodson*, 2023 IL App (1st) 191353, ¶ 102.

¶ 39                                III. CONCLUSION

¶ 40    The judgment of the circuit court of Cook County is affirmed.

¶ 41    Affirmed.