THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANNA
M. CHIRCHIRILLO, Defendant-Appellant.

Second District    No. 2—07—1102

Opinion filed July 31, 2009.

Thomas A. Lilien, of State Appellate Defender's Office, of Elgin, and Lawrence S. Fischer, of Law Office of Lawrence S. Fischer, of Cary, for appellant.

Paul T. Whitcombe, State's Attorney, of Dixon (Lawrence M. Bauer and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUDSON delivered the opinion of the court:

At a bench trial, the State claimed that defendant, Anna M. Chirchirillo, was accountable for the acts of her codefendant when

defendant helped her codefendant break into a home and steal a firearm. At no time during the trial did the State establish that the codefendant was a convicted felon. However, the State did prove that defendant was. The court found defendant guilty of residential burglary (720 ILCS 5/19—3(a) (West 2006)) and unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 2006)) under an accountability theory and sentenced her to concurrent prison terms of 11 years for residential burglary and 3 years for unlawful possession of a weapon by a felon. In imposing the sentences, the court determined that an 11-year sentence for residential burglary was proper because the stolen gun most likely would be used to kill or harm someone. Following the denial of her posttrial motion, defendant appealed, arguing that (1) she was not proved guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon and (2) her 11-year sentence for residential burglary is excessive. We affirm in part and reverse and vacate in part.

The relevant evidence presented at trial consisted of the following. Rich Schrock testified that his home was broken into on April 18, 2006. After making this discovery, Schrock searched his home to discover what, if anything, was stolen. Schrock learned that the .357 Smith and Wesson that he kept in the headboard of his bed in his locked bedroom was missing. Schrock stated that the only people who knew about his gun were his two daughters, one of whom was named Tiffany. His daughters did not have keys to his house and were not given permission to enter his home. Schrock stated that, as of the time of trial, his gun had not been recovered.

Officer Jeff Blake testified that he processed the crime scene at Schrock's home. During his investigation, he discovered latent fingerprints on the inside and outside of the storm window that covered the window in Schrock's bedroom. Officer Blake, who was familiar with Tiffany, did not believe that she could have broken into Schrock's home through that window, because the window opened only 14 inches and Tiffany was too large to fit through that opening.

Following his investigation, Officer Blake removed the storm window and submitted it to the crime lab along with Tiffany's and defendant's fingerprint cards. Officer Blake stated that he decided to forward defendant's fingerprint card to the crime lab because Tiffany and defendant were often together, and thus he believed that, if Tiffany were involved in the burglary of her father's home, defendant might also be. Based on the fingerprint analysis that Officer Blake received from the crime lab, he decided to interview defendant.

Although defendant initially denied any involvement in the crimes, she later indicated, only after Officer Blake told her that 5 of the 17

fingerprints found on the storm window were positively identified as belonging to her, that she helped Tiffany gain access to Schrock's home. In her statement, defendant indicated that on April 18, 2006, she, Tiffany, and two other people were discussing what they could do to get money to buy drugs. During that conversation, Tiffany informed the group that Schrock kept a gun in his home and that they could steal the gun and sell or trade it for drugs. The group then drove to Schrock's home, where defendant crawled through Schrock's bedroom window, unlocked Schrock's bedroom and front doors, and let Tiffany into Schrock's house. Once Tiffany was inside Schrock's home, she immediately went to the headboard of Schrock's bed, removed the gun he kept there, and put the gun in her waistband. Defendant and Tiffany returned to the car, and everyone but defendant went to see a man named "Crazy" about trading or selling the gun for drugs.

Later, defendant modified her statement, saying that Tiffany put the gun in her shirt and that Crazy said that he would scratch off the serial number on the gun so that it could not be traced. After the police confronted her, defendant again altered her statement, indicating that she lied when she said that she did not accompany her friends to see Crazy. Defendant explained that she went with her friends to Aurora to see Crazy and that they traded the weapon for drugs.

The State then submitted proof that defendant was a convicted felon. Defendant had been convicted of three counts of deceptive practices, which is a Class 4 felony (720 ILCS 5/17—1(B)(d) (West 2004)). At no time did the State submit any proof that Tiffany was a convicted felon.

During closing arguments, the State argued that defendant was guilty of both unlawful possession of a weapon by a felon and residential burglary under an accountability theory. The trial court found defendant guilty of both offenses. In making that decision, the court stated:

"[T]he one question that kind of stuck a little bit was the question of the accountability concept as it applies to the possession of the weapon as a felony charge. Hence my specific question, I don't think anybody was trying to argue that [defendant was] accountable for some other felon's possession of a weapon. It's a theory that the accountability concept applies to the possession element of possession of weapons by a felon. I find the State's argument with regard to—it's like a drug transaction where someone motivates—or to use the words in the accountability statute, with the intent to promote or facilitate the commission of an offense they knowingly solicit, aid, abet, agrees to aid or attempts to aid the other person in the planning or commission of an offense. And specifically where

somebody prompts someone else to do drug transactions so they don't have to touch the item, that doesn't mean that they're not guilty of this offense. And that concept, I think, does apply in this case. I think that when [defendant] was involved in this situation and before they went over to the house, they knew exactly why they were going into the house, she knew at that time she was [a] felon, she knew what kind of risks were involved. Even though she didn't have her hands on the gun, the theory that we're talking about in terms of accountability where she at least at a minimum aided and abetted in that concept applies."

The relevant testimony presented at the sentencing hearing revealed the following. Robert Enlow, defendant's former probation officer, testified that defendant did not comply with the terms of her probation. For instance, defendant never sought treatment for her addiction. Defendant, who was homeless, also would lie about where she was living and would associate with people with whom she was court-ordered not to have contact.

Defendant testified that she was 21 years old, that she had a 6-year-old son who was living with his grandmother, that she desired treatment for her addiction, that she would like to go to school to become a certified nurse's assistant, and that she was willing to compensate Schrock for the loss of his gun. When the offenses were committed, defendant was under the influence of drugs and did not believe that anyone would be harmed as a result of the crimes. Defendant also did not know what Crazy would do with the gun or that the gun would be "out in the street." Although defendant indicated in her statement that Crazy was going to scratch off the serial number on the gun, she did not understand the purpose for such an act. Now, however, she realized that the purpose was so that the gun could not be traced. On cross-examination, defendant admitted that in her statement she specifically stated that the serial number on the gun was going to be scratched off so that it could not be traced.

In sentencing defendant, the trial court went through all of the factors in aggravation and mitigation. In so doing, the court commented about whether physical harm was caused or threatened to another. 730 ILCS 5/5—5—3.1(a)(1) (West 2006). The court stated:

"While I understand that there were no specific injuries because of the firing of a gun during this situation, what haunts me through the entire sentencing hearing is the question of what happened to the gun. I don't know that but the fact is that there's only one thing a gun can be used for and I don't think once the serial number was obliterated from this gun it was intended to be used in a practice range. I think that's very clear and I don't think that there's anybody in this courtroom that can believe otherwise.

Second of all—so I will give the proper weight to that comment that I just made in making my decision."

The court then found that, although defendant may not have realized that the gun could be used to commit future crimes, she never acted in any way to diminish that potential, such as by alerting the police before her arrest that the gun was traded to Crazy. 730 ILCS 5/5—5—3.1(a)(2) (West 2006). In assessing whether defendant acted under strong provocation, the court determined that defendant's drug addiction certainly contributed to her crimes. 730 ILCS 5/5—5—3.1(a)(3) (West 2006). The court also found that there were no grounds tending to excuse defendant's criminal conduct (730 ILCS 5/5—5—3.1(a)(4) (West 2006)), that defendant's criminal conduct was facilitated by Tiffany and the other people she was with (730 ILCS 5/5—5—3.1(a)(5) (West 2006)), that defendant had agreed to reimburse Schrock for his loss (730 ILCS 5/5—5—3.1(a)(6) (West 2006)), that defendant had not led a law-abiding life for a substantial period of time before she committed the current crimes (730 ILCS 5/5—5—3.1(a)(7) (West 2006)), that defendant would still be able to see her son even if she were imprisoned (730 ILCS 5/5—5—3.1(a)(11) (West 2006)), and that imprisonment would not endanger defendant's health (730 ILCS 5/5—5—3.1(a)(12) (West 2006)). The court further stated that it was unsure whether defendant's criminal conduct was likely to recur or whether defendant's character and attitude indicated that she was unlikely to reoffend (730 ILCS 5/5—5—3.1(a)(8), (a)(9) (West 2006)).

In assessing the factors in aggravation, the court stated:

"As I said just a minute ago, even though the gun wasn't discharged at the time that the residential burglary occurred, there's no doubt about the fact that guns are only used for one purpose, and especially when they're sold to somebody who's a known dealer of drugs and the serial number is obliterated. I understand your comment that you feel you didn't know that but I don't believe you."

The court then found that defendant was compensated for her crimes when Crazy gave her and her friends drugs in exchange for the weapon (730 ILCS 5/5—5—3.2(a)(2) (West 2006)) and that defendant had a mounting criminal history (730 ILCS 5/5—5—3.2(a)(3) (West 2006)). The court also observed that defendant was given the option of treating her drug problem in the past and that she had failed to address her addiction. Given these facts, the court doubted that defendant was seeking to treat her addiction now because she truly desired to get well. Rather, the court believed that, given that defendant was in jail and that the court would consider anything she

said, defendant may have merely said what she thought the court needed to hear from her in order to impose a minimal sentence. The court then sentenced defendant to concurrent prison terms of 11 years for residential burglary and 3 years for unlawful possession of a weapon by a felon.

Defendant filed a timely posttrial motion. Although defendant argued in her motion that her sentences were excessive in light of the mitigating evidence, she did not claim that the State failed to prove her guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon under an accountability theory when it did not establish that Tiffany was a convicted felon. The trial court denied defendant's posttrial motion, and this timely appeal followed.

On appeal, defendant raises two issues. She argues that she was not proved guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon under an accountability theory and that her 11-year sentence for residential burglary is excessive. We consider each argument in turn.

The first issue we address is whether defendant was proved guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon under an accountability theory. In considering that issue, we note that the parties disagree about which standard of review should apply. Citing *People v. Smith*, 191 Ill. 2d 408, 411 (2000), defendant argues that our review is *de novo*, because the issue is whether the uncontested facts are sufficient to prove the statutory elements of the charged crime. In contrast, the State submits that we should consider whether, after viewing the evidence in a light most favorable to the prosecution, any rational fact finder could have found defendant guilty beyond a reasonable doubt. See *People v. Tenney*, 205 Ill. 2d 411, 427 (2002). Because the relevant facts are uncontested and the issue concerns whether these uncontested facts establish the elements of unlawful possession of a weapon by a felon under an accountability theory, we review *de novo* defendant's claim.

Defendant advances two reasons why she was not proved guilty beyond a reasonable doubt. First, she claims that "[t]he State erroneously expanded the accountability theory because there was no evidence that [defendant] ever possessed Mr. Schrock's handgun." Second, she argues that, "[w]hile the State established that Tiffany Schrock possessed the handgun, it failed to present any evidence at all that Tiffany was a felon. Therefore, [defendant] could not be accountable for Tiffany's guilt for an offense that Tiffany did not commit."

The dispositive subissue is whether the State's failure to establish that Tiffany was a convicted felon mandates that defendant cannot be guilty of unlawful possession of a weapon by a felon under an account-

ability theory. As a threshold matter, we note that defendant never raised this issue in the trial court, and, thus, her argument could be considered forfeited. Compare *People v. Lindsey*, 324 Ill. App. 3d 193, 202 (2001) (court found the defendant forfeited argument that the State, by failing to prove that the principal was a convicted felon, did not prove the defendant guilty of unlawful possession of a weapon by a felon under an accountability theory), with *People v. Enoch*, 122 Ill. 2d 176, 190 (1988) (when a defendant claims that he was not proved guilty beyond a reasonable doubt, he need not file a posttrial motion attacking the sufficiency of the evidence in order to preserve that issue for review on appeal). However, the State does not assert that defendant forfeited this argument and instead addresses the merits of defendant's claim. We, too, will therefore consider defendant's claim on its merits. See *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000) ("The rules of waiver are applicable to the State as well as the defendant in criminal proceedings, and the State may waive an argument that the defendant waived an issue by failing to argue waiver in a timely manner").

Under Illinois law, a person is legally accountable for another's criminal conduct when, "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2(c) (West 2006); see *People v. Dennis*, 181 Ill. 2d 87, 96 (1998). "A charge based on accountability must necessarily flow from the principal crime at issue." *People v. Hicks*, 181 Ill. 2d 541, 547 (1998). In Illinois, in order to be found guilty of unlawful possession of a weapon by a felon, the State must prove beyond a reasonable doubt that the defendant (1) knowingly possessed a firearm and (2) has been convicted of a felony. 720 ILCS 5/24—1.1(a) (West 2006).

We find the decision in *People v. Griffin*, 247 Ill. App. 3d 1 (1993), instructive in resolving whether an accomplice may be proved guilty beyond a reasonable doubt of an offense when the State fails to establish that the principal committed the crime. In *Griffin*, the defendant was charged with two counts of criminal sexual assault and four counts of aggravated criminal sexual assault. *Griffin*, 247 Ill. App. 3d at 3. Two of the four counts of aggravated criminal sexual assault were based on the allegation that the victim was younger than 13 and the perpetrator was 17 years of age or older. The other two counts of aggravated criminal sexual assault were premised on an allegation that the assault caused bodily harm to the victim.

The facts presented at the jury trial revealed that the victim, a 12-year-old girl, was walking with her 12-year-old female cousin when

the victim saw two young men she knew from a nearby community center. *Griffin*, 247 Ill. App. 3d at 3. While the two men talked with the girls, the girls saw the defendant, whom neither of the girls recognized, standing next to a station wagon that was parked on the street. Subsequently, the men asked the girls if they wanted a ride home. When the girls refused the offer, the two men grabbed the victim and threw her into the station wagon. While the defendant remained in the driver's seat, the two men beat and sexually assaulted the victim in the backseat.

The jury returned a single general verdict finding the defendant guilty of aggravated criminal sexual assault and criminal sexual assault. The jury's verdict did not indicate whether the aggravated criminal sexual assault convictions were based on the ages of the victim and the perpetrator or on bodily harm. The trial court merged the two aggravated criminal sexual assault counts that were based on age and the two counts of criminal sexual assault into the two counts of aggravated criminal sexual assault that were premised on bodily harm, and it sentenced the defendant to concurrent terms of seven years' imprisonment. *Griffin*, 247 Ill. App. 3d at 5.

On appeal, in assessing whether the jury was properly instructed as to the defendant's accountability for the aggravated criminal sexual assault counts based on age, the appellate court observed that a defendant cannot be held accountable for an aggravated criminal sexual assault based on age when that offense allegedly is committed by a person younger than 17 against a victim who is 12, because, under such circumstances, no violation of that provision of the aggravated criminal sexual assault statute occurs. *Griffin*, 247 Ill. App. 3d at 15. In order for a defendant to be held accountable for an aggravated criminal sexual assault based on age, the State has to prove that "the offense was committed by the principal." *Griffin*, 247 Ill. App. 3d at 15 n.3. Thus, the State had to establish that the two men who sexually assaulted the victim were 17 or older in order for the defendant to be held accountable for their acts. *Griffin*, 247 Ill. App. 3d at 15 (noting that "[i]t is hornbook law that one cannot be held vicariously liable for an act committed by others which did not constitute an offense at the time of its commission").

Likewise, in *Fagan v. Washington*, 942 F.2d 1155, 1158 (7th Cir. 1991), in interpreting Illinois's accountability statute, the Seventh Circuit indicated that, in order for a defendant (an accomplice) to be held accountable for the acts of a principal, the State has to first make out a *prima facie* case against the principal. In *Fagan*, the defendant was convicted of murder under an accountability theory. *Fagan*, 942 F.2d at 1156. The evidence presented at trial revealed that the

defendant, who was armed with a .22-caliber rifle, and his codefendant, who had a shotgun, went to a game room where rival gang members would hang out. Accompanying the defendant and his codefendant were between 6 and 13 members of their own gang. The defendant was seeking revenge against the rival gang for a previous shooting. Standing outside the game room was a group of between 12 and 15 people. When the defendant and the group he was with were as much as 45 feet away from the group standing outside the game room, the defendant and his codefendant began shooting. When the shooting stopped, it was discovered that one person had been killed. The victim was shot with a .38-caliber pistol that was pressed against the victim's back when it was fired. The pistol was never recovered, and no one knew who killed the victim.

The Seventh Circuit found that, based on such evidence, the defendant was not proved guilty beyond a reasonable doubt of murder under an accountability theory.[1] *Fagan*, 942 F.2d at 1157 ("[the defendant] had a winning claim on direct appeal that the [trial] judge had either convicted him of murder on insufficient evidence or misunderstood the law of accountability"). Lacking from the State's case was any evidence of who fired the fatal shot. *Fagan*, 942 F.2d at 1159. Without such evidence, an essential element of murder was missing, *i.e.*, the identity of the shooter. *Fagan*, 942 F.2d at 1159. Thus, it could not be successfully argued that the defendant shared with the unknown perpetrator the "common design" to harm a rival gang member. *Fagan*, 942 F.2d at 1159.

Consistent with the decisions in *Griffin* and *Fagan*, other states have observed that a defendant cannot be found guilty of an offense under an accountability theory if the State has failed to establish the principal's guilt of the charged crime. *Miller v. People*, 98 Colo. 249, 251, 55 P.2d 320, 321 (1936) (noting that, at an accomplice's trial, a principal's confession to the crime may be admitted, because, in order to establish the accomplice's guilt, the State must prove that the principal committed the crime); *Murphy v. State*, 184 Ind. 15, 16, 110 N.E. 198, 198 (1915) (when the evidence allows the jury to infer that a principal committed a crime, a defendant who served as an accomplice may be held vicariously liable for the principal's crime); *People v.*

---

[1]As relevant, a defendant is guilty of first degree murder when the State proves beyond a reasonable doubt that, in performing the acts that cause the death of an individual: "(1) he either intends to kill *** that individual *** or knows that such acts will cause death to that individual ***; or (2) he knows that such acts create a strong probability of death *** to that individual." 720 ILCS 5/9—1(a)(1), (a)(2) (West 2008).

*Vaughn*, 186 Mich. App. 376, 381-83, 465 N.W.2d 365, 369 (1990) (in sexual assault case, the defendant was proved guilty beyond a reasonable doubt under an accountability theory when it was established that someone, though not the defendant, penetrated the victim and that the defendant aided this unknown person in the commission of that offense). An accomplice may be liable even if there is an aggravating element of the offense and the evidence reveals that the principal engaged in that aggravating conduct but the accomplice did not. See, *e.g.*, *Schroeder v. State*, 96 Wis. 2d 1, 2, 8, 291 N.W.2d 460, 461, 464 (1980) (the defendant, an armed and unmasked robber, was proved guilty beyond a reasonable doubt of masked concealment during an armed robbery; concealment elevated the class of the armed robbery, because the evidence revealed that the other armed robber accompanying the defendant wore a mask, and, thus, the defendant could be held accountable for the aggravating factor even though the defendant did not attempt to conceal his own identity). What matters in these cases is whether a *prima facie* case has been made against the principal and, once all of the elements of the charged offense have been established, whether the accomplice aided, abetted, or agreed or attempted to aid the principal in the planning or commission of the offense.[2] See 720 ILCS 5/5—2(c) (West 2006).

■ Here, the trial court found that defendant was accountable for Tiffany's act of possessing Schrock's weapon and that, because defendant was a convicted felon, she was guilty of unlawful possession of a weapon by a felon. However, as the above cases instruct, defendant could not be held accountable for aiding Tiffany in that offense when it was never established that Tiffany was a convicted felon. Because the felony status of the person possessing the weapon is an element of unlawful possession of a weapon by a felon, the State, in order to establish that defendant was accountable for unlawful possession of a weapon by a felon, had to prove that Tiffany possessed the weapon,

---

[2]That is not to say, however, that an accomplice cannot be found guilty beyond a reasonable doubt when the principal has an affirmative defense. See 2 W. LaFave, Substantive Criminal Law §13.3(c), at 364 (2d ed. 2003) ("[o]ne question which has not been resolved is whether the various defenses available to the principal *** are likewise available to the accomplice in the sense that the accomplice may establish the defense and thus show that no crime was committed by the principal"). In such a case, the principal has still committed the crime, but, because of some legal excuse or justification, the principal is not liable for his actions. See Black's Law Dictionary 451 (8th ed. 2004) (an affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the *** prosecution's claim, even if all the allegations in the complaint are true").

that Tiffany was a convicted felon, and that defendant aided, abetted, or agreed or attempted to aid Tiffany in the planning or commission of that offense.

The State claims that defendant's conviction should be upheld because the unlawful possession of a weapon statute was designed to deter felons, who are perhaps more likely than most people to use weapons to harm others, from possessing weapons. While that may be the policy behind making it illegal for felons to possess weapons, we cannot affirm defendant's conviction based solely on this policy.

The State also attempts to justify defendant's conviction by arguing that she constructively possessed the weapon. Thus, because defendant is a convicted felon, she could have been found guilty of unlawful possession of a weapon by a felon when she was with Tiffany, who actually possessed Schrock's gun. The fundamental flaw with the State's argument is that it cannot, after advancing an accountability theory at trial and obtaining a conviction under that theory, advance a different theory of guilt on appeal. As the Seventh Circuit noted in *Fagan* in addressing a claim that the defendant could have been proved guilty of murder under the theory of felony murder, "the [S]tate must live with the consequences of having proceeded on a theory that it could not establish with the certitude required in criminal cases." *Fagan*, 942 F.2d at 1160; see also *People v. Crespo*, 203 Ill. 2d 335, 344 (2001) (in aggravated battery case where the State claimed at trial that all three stab wounds constituted great bodily harm, the State could not change theories on appeal and argue that only one stab wound was sufficient to sustain the charge).

We are mindful of the trial court's concern that a defendant who is a convicted felon may seek to avoid liability for unlawful possession of a weapon by a felon under an accountability theory simply by having another person, who is not a convicted felon, maintain control over the weapon. However, a defendant's attempt to escape liability in such a manner is not foolproof. Although, under such circumstances, the State may not be able to establish the defendant's guilt under an accountability theory, the State certainly could argue that the defendant constructively possessed the weapon and that, because the defendant is a convicted felon, he or she is guilty of unlawful possession of a weapon by a felon. See *Lindsey*, 324 Ill. App. 3d at 195-96, 202-03 (State established beyond a reasonable doubt the defendant's guilt of unlawful possession of a weapon by a felon when it proved that the defendant constructively possessed weapons found in a car and that the defendant was a convicted felon). In any event, we determine that the State, by failing to establish Tiffany's guilt of the crime charged, failed to prove defendant guilty of unlawful possession

of a weapon by a felon under an accountability theory. See *Griffin*, 247 Ill. App. 3d at 15. Accordingly, we need not consider defendant's other attack on the sufficiency of the evidence.

■ We now address whether defendant's 11-year sentence for residential burglary is excessive because the trial court speculated about the harm that the gun could cause to future unknown victims. As an initial matter, we consider whether, as the State urges, defendant forfeited review of this argument by failing to raise it during the sentencing proceedings and by participating in the presentation of evidence and arguments that induced the alleged error. We find no forfeiture here, because, even if defendant failed to preserve this precise issue in the trial court, the forfeiture rule is less rigidly applied when the claimed error is based on the trial court's conduct. *People v. Primm*, 319 Ill. App. 3d 411, 425 (2000).

As to the merits, the trial court is the proper forum to determine a sentence, and the trial court's sentencing decision is entitled to great deference and weight. *People v. Latona*, 184 Ill. 2d 260, 272 (1998). The trial court is charged with the duty of balancing relevant factors and making a reasoned decision as to the appropriate punishment in each case. *Latona*, 184 Ill. 2d at 272. When a sentence falls within the statutory limits for the offense, it will not be disturbed unless the trial court abused its discretion. *People v. Coleman*, 166 Ill. 2d 247, 258 (1995). A trial court abuses its sentencing discretion when the penalty imposed "is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

In determining an appropriate sentence, relevant considerations include the nature of the crime, the protection of the public, deterrence, and punishment, as well as the defendant's rehabilitative prospects and youth. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight to be attributed to each factor in aggravation and in mitigation depends upon the particular circumstances of the case. *Kolzow*, 301 Ill. App. 3d at 8. The existence of mitigating factors does not obligate the trial court to impose the minimum sentence. *People v. Adamcyk*, 259 Ill. App. 3d 670, 680 (1994). Moreover, the trial court is not required to specifically identify all factors in mitigation that it considered. *Adamcyk*, 259 Ill. App. 3d at 680. A sentencing judge is presumed to have considered all relevant factors, including the mitigating evidence presented, unless the record affirmatively shows otherwise. *People v. Hernandez*, 319 Ill. App. 3d 520, 529 (2001).

Residential burglary is a Class 1 felony. 720 ILCS 5/19—3(b) (West 2006). A defendant convicted of a Class 1 felony faces a prison term of between 4 and 15 years. 730 ILCS 5/5—8—1(a)(4) (West 2006).

Defendant's 11-year sentence fell within the upper middle of this range.

Defendant argues that her sentence is oppressive because the court speculated about the harm that the gun could cause to future unknown victims. We disagree. Indeed, the court was fully entitled to observe that stealing and selling a gun is more serious than stealing and selling something like a television or a stereo. See *People v. Spicer*, 379 Ill. App. 3d 441, 468 (2007) (although a court cannot consider an element of an offense as an aggravating factor in imposing a sentence, nothing prevents a court from considering the specific facts of the case, such as the extremely young or old age of the victim of an aggravated criminal sexual assault). Unlike a gun, a television or a stereo is not likely to be used to harm or threaten harm to another. Given all of the factors the court considered, such as defendant's mounting criminal history, the compensation defendant received for committing the crime, doubt as to defendant's desire to overcome her addiction, and the seriousness of the offense as evinced by the threat of harm, we cannot conclude that the trial court abused its discretion when it sentenced defendant to 11 years' imprisonment for residential burglary.

Thus, for these reasons, we reverse defendant's conviction of unlawful possession of a weapon by a felon and vacate the 3-year sentence imposed on that offense, and we affirm defendant's 11-year sentence for residential burglary.

Affirmed in part and reversed and vacated in part.

JORGENSEN and BURKE, JJ., concur.