NOTICE
This Order was filed under Supreme
Court Rule 23 and is not precedent
except in the limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200239-U

NO. 4-20-0239

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 16, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| STEVEN L. FEAGIN, | ) | No. 00CF2187 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The motion of the Office of the State Appellate Defender to withdraw as appellate
counsel is granted, and the trial court's dismissal of defendant's amended
postconviction petition is affirmed.

¶ 2     Defendant, Steven L. Feagin, appeals from the second-stage dismissal of his

second-amended petition for postconviction relief. On appeal, the Office of the State Appellate

Defender (OSAD) was appointed to represent him. OSAD has filed a motion to withdraw as

appellate counsel, alleging an appeal would be frivolous. For the reasons that follow, we grant

OSAD's motion and affirm the trial court's second-stage dismissal of defendant's

second-amended postconviction petition.

¶ 3                                    I. BACKGROUND

¶ 4        This case represents defendant's sixth appeal before this court. Due to the history of this case and the parties' familiarity with the issues presented, we reiterate only the facts necessary to reach our decision in this appeal.

¶ 5        A. The State's Charges and Defendant's Motion to Suppress Evidence

¶ 6        In December 2000, the State charged "JAMES DOE, A BLACK MALE DNA PROFILE," by information with aggravated criminal sexual assault (720 ILCS 5/12-14(a)(1) (West 1998)), against three separate victims in three separate incidents. The identity of James Doe remained unknown until approximately seven years later, when the Broward County, Florida, sheriff's office began investigating a June 2007 sexual assault that occurred in Deerfield Beach, Florida.

¶ 7        In June 2007, Florida detective Eric Hendel investigated the sexual assault of A.C. and submitted a deoxyribonucleic acid (DNA) profile found on her bedsheets into the Combined DNA Index System (CODIS), a national computerized database of DNA samples. CODIS indicated the DNA matched three unsolved sexual assault cases in Champaign and Urbana, Illinois.

¶ 8        After learning that the suspect had appeared in Florida, Urbana police officers consulted the University of Illinois student directories to find people with a connection to Florida. Of the 37,665 students listed in the 1994-95 student-staff directory, 73 students were from Florida. After eliminating female and Asian students from the list, 54 names remained. Those 54 students were numbered, and the authorities attempted to discern whether they were African American. Student number 13 was defendant, whose home address was listed in Deerfield Beach, Florida, the same city in which A.C.'s sexual assault occurred.

¶ 9        The Urbana authorities determined that defendant attended the University of Illinois in Champaign-Urbana from 1991 through 1995 and, after graduating, remained in the area as a graduate assistant with the university's football team. The 1993 assault took place at 306 E. Michigan, apartment No. 10. At the time, defendant lived in the same building, in apartment No. 7. The February 1995 assault occurred in the Colony West Apartments, where defendant was also living, and the building in which the assault took place was "within sight" of defendant's building. The 2007 Florida assault occurred two houses away from defendant's home.

¶ 10        According to Hendel's affidavit, all four victims were Caucasian females with blonde hair and blue or green eyes. Defendant's wife also had blonde hair and blue eyes. Based on this information, the Florida trial court granted a search warrant permitting police to obtain oral swabs from defendant for the purpose of obtaining a DNA sample.

¶ 11        In October 2008, the State filed amended charges alleging defendant committed the aggravated sexual assaults against S.B., T.B., and M.P. In December 2008, a grand jury indicted defendant, as the "James Doe" defendant, with six counts of aggravated criminal sexual assault, alleging defendant sexually assaulted S.B. in November 1993 (count I), T.B. in February 1995 (counts II and III), and M.P. in July 1995 (counts IV-VI).

¶ 12        In November 2011, the trial court ordered defendant to supply samples of his saliva, head hair, pubic hair, and blood for DNA testing.

¶ 13        In January 2012, defendant filed a motion to suppress evidence pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), arguing the State improperly obtained his DNA from a related Florida sexual assault case and that the Florida search warrant contained several deliberate or reckless omissions "for the purpose of misleading the [Florida] magistrate."

Defendant requested a *Franks* hearing, arguing a favorable outcome of that hearing would (1) require quashing the Florida warrant and (2) preclude the State from using against defendant "any evidence seized under the purported authority of the warrant."

¶ 14        In February 2012, the trial court held a hearing on defendant's motion to suppress evidence. Following the parties' arguments, the court denied defendant's motion, finding the search warrant was properly issued and nothing in the record indicated the matter needed to proceed to any further stage of a *Franks* hearing.

¶ 15                        B. Defendant's Jury Trial and Sentence

¶ 16        In June 2012, the matter proceeded to a jury trial on counts IV-VI, where the trial court previously severed counts I-III for trial purposes. Counts IV-VI alleged defendant committed aggravated criminal sexual assault against M.P. in that, while displaying an object that appeared to be a handgun, he (1) placed his penis in M.P.'s vagina, (2) made contact between his mouth and M.P.'s sex organ, and (3) made contact between an object and M.P.'s sex organ.

¶ 17        At trial, the State called multiple witnesses, including the victim, M.P., to testify. M.P. testified that on July 13, 1995, she studied art education at the University of Illinois and lived off-campus in an apartment in Urbana, Illinois. On the evening of the assault, M.P. encountered an African American male in her doorway while moving out of her apartment. After a brief exchange, M.P. closed the door and loaded another box into her car. M.P. testified that, upon reentering the building, she saw the same male standing inside her apartment holding a gun. M.P. then described her subjugation to a sexual assault in the apartment. Following the assault, M.P. called the police, who subsequently took her to the hospital where a nurse

completed a "rape kit." Despite being unable to identify anyone from photo lineups, M.P. worked with a police sketch artist to create a sketch of the perpetrator.

¶ 18        Jennifer Aper, a forensic scientist for the Illinois State Police, testified as an expert in DNA and forensic biology. Aper performed a polymerase chain reaction (PCR) analysis on the buccal swab samples collected from defendant. With this type of testing, DNA is isolated from a sample and quantified and amplified, so that many copies are made of the profile for analysis and testing. Aper explained that "no two people will have the exact same DNA except for identical twins," and testified she developed a male DNA profile from the "sperm fraction" of M.P.'s vaginal swabs. Aper determined the male DNA recovered from M.P. "would be found in approximately one in one quintillion unrelated African American individuals," and matched defendant's DNA profile. On cross-examination, defense counsel never questioned Aper regarding how accurate her determination was that the male DNA recovered from M.P. matched defendant's DNA profile. Ultimately, the jury found defendant guilty of all three counts of aggravated criminal sexual assault.

¶ 19        In July 2012, the trial court held a sentencing hearing and ultimately sentenced defendant to 30 years' imprisonment on each count, ordering the sentences to run consecutively. Before pronouncing its sentence, the court indicated it had considered (1) defendant's presentence investigation report (PSI), (2) the evidence presented at trial, (3) defendant's statement in allocution, (4) the comments of counsel, and (5) the factors in aggravation and mitigation. Despite recognizing the presence of mitigating evidence, the court found no statutory mitigating factors applied to defendant's case.

¶ 20        In aggravation, the trial court noted defendant had two prior criminal convictions stemming from Florida, "one that *** referred to the neglect of child, delinquency, etc., and then

there's the contempt of court violation of an injunction, protection, *** and violation of injunction, protection, and domestic violence." The court also considered the need to deter other similarly situated individuals from committing the same type of offense and stated, "What was presented at this trial involving the victim was an unspeakable act of violence against a young woman. I have heard testimony that three other young women were placed in the same situation." The court then determined that any sentence imposed had to "send the message loudly and clearly that our society cannot tolerate this type of violence," and "if the sentence imposed today gives just one [person] pause to think about what might occur if you do it and get caught, then the deterrent factor has value."

¶ 21   Defendant appealed, and in May 2014, this court affirmed defendant's conviction but vacated certain fines. See *People v. Feagin*, 2014 IL App (4th) 120891-U.

¶ 22         C. Postconviction Proceedings

¶ 23   In March 2015, defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), alleging ineffective assistance of trial and appellate counsel and that the trial court abused its discretion during defendant's jury trial and sentencing. The court subsequently dismissed defendant's *pro se* petition as frivolous and patently without merit. On appeal, this court remanded the case for second-stage proceedings, to include appointment of counsel, after finding defendant presented the gist of a constitutional claim of ineffective assistance of counsel where he alleged defense counsel failed to adequately cross-examine the State's DNA expert regarding the number of loci at which defendant's DNA matched the male DNA recovered from M.P. *People v. Feagin*, No. 4-15-0281 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 24    In June 2018, appointed counsel filed an amended postconviction petition alleging (1) ineffective assistance of trial counsel for failing to challenge the conclusions made by the State's DNA expert during cross-examination, (2) ineffective assistance of trial counsel for failing to assert a violation of defendant's fourth amendment right against unreasonable searches and seizures when police obtained defendant's DNA in Florida and improperly sent it to Illinois to be used in the present case, and (3) defendant's sentence violated the proportionate penalties and due process clauses under the United States and Illinois Constitutions by constituting cruel and unusual punishment. The amended petition did not contain any claim of ineffective assistance of appellate counsel, where counsel failed to raise defendant's claims on direct appeal.

¶ 25    In July 2018, the State filed a motion to dismiss defendant's amended postconviction petition, arguing defendant's claims were procedurally barred by forfeiture where defendant could have raised his claims on direct appeal but failed to do so. In August 2018, the trial court dismissed defendant's amended petition on forfeiture grounds.

¶ 26    In September 2018, defendant filed a *pro se* motion to reconsider, arguing his postconviction counsel provided an unreasonable level of assistance in violation of Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Defendant alleged that the claims he presented to his postconviction counsel included allegations of ineffective assistance of both trial and appellate counsel and further alleged that, had postconviction counsel raised the issue of appellate counsel's ineffectiveness, the State would have been precluded from moving to dismiss his amended petition. Subsequently, the trial court denied defendant's *pro se* motion to reconsider.

¶ 27    On appeal, defendant argued postconviction counsel provided an unreasonable level of assistance in violation of Rule 651(c) when he failed to amend defendant's *pro se*

postconviction petition to allege ineffective assistance of appellate counsel, which was necessary to overcome forfeiture. This court agreed and remanded the cause for further proceedings. See *People v. Feagin*, 2019 IL App (4th) 180653-U.

¶ 28        In February 2020, newly appointed counsel filed a second-amended postconviction petition. The second-amended petition alleged (1) ineffective assistance of trial counsel for failing to "challenge the adequacy and validity of the 15-point loci DNA test conducted," (2) ineffective assistance of trial counsel for failing to assert a violation of defendant's fourth amendment right against unreasonable searches and seizures when police obtained defendant's DNA in Florida and improperly sent it to Illinois to be used in the present case, (3) defendant's sentence violated the proportionate penalty and due process clauses of the United States Constitution and Illinois Constitution by constituting cruel and unusual punishment, and (4) ineffective assistance of appellate counsel for failing to raise defendant's claims on direct appeal.

¶ 29        In March 2020, the State filed a motion to dismiss defendant's second-amended postconviction petition. Regarding defendant's claims of ineffective assistance of trial counsel, the State argued "that the trial evidence was actually based on a 16 loci comparison and was matched to the defendant's profile at all 16 loci, a profile expected to appear in approximately 1 in 1.0 quintillion unrelated African American individuals," and that it was appropriate trial strategy "to attempt to downplay the evidence by addressing it as little as possible." The State also argued that defendant's second-amended petition contained no specific allegation of impropriety regarding the transport of defendant's DNA sample from Florida to Illinois and maintained that "the DNA evidence presented at trial in this case was the result of an entirely separate DNA sample, procured under S. Ct. Rule 413." Further, the State asserted appellate

- 8 -

counsel could not have been ineffective for failing to raise defendant's claims on direct appeal where "defendant [had] failed to make a substantial showing of ineffectiveness under either prong of the *Strickland* standard for any of his claimed errors."

¶ 30        In addressing defendant's claim that his sentence constituted cruel and unusual punishment, the State argued defendant's sentence "was imposed pursuant to the statutory limits set by the Illinois legislature and determined by the [trial] court after hearing mitigation and aggravation evidence and considering a pre-sentence report in this case." The State further argued that defendant's "mere assertion that the sentence is unconstitutional when it complies with the substantive and procedural statutes controlling it falls far short of the required mark to proceed to an evidentiary hearing."

¶ 31        In April 2020, the trial court issued a written order dismissing defendant's second-amended postconviction petition, finding defendant's trial counsel "correctly limited his cross," where "trial counsel chose not to ask questions that would only generate a response from the expert identical to the testimony presented on direct." The court further found "[t]he Florida DNA was not the DNA examined in this case," and that trial counsel "raised challenges concerning the taking of the Defendant's DNA."

¶ 32        This appeal followed. OSAD appointed counsel for defendant on appeal, filed a motion for leave to withdraw as defendant's counsel, and attached a supporting memorandum of law, citing *People v. Johnson*, 192 Ill. 2d 202, 735 N.E.2d 577 (2000), *People v. Kuehner*, 2015 IL 117695, 32 N.E.3d 655, and *People v. Meeks*, 2016 IL App (2d) 140509, 51 N.E.3d 1109.

¶ 33                                II. ANALYSIS

¶ 34        In this case, OSAD asserts defendant is not entitled to relief because his claims are not supported by law and fail to make a substantial showing of a constitutional violation.

Defendant filed, *pro se*, a response in opposition to OSAD's motion to withdraw, maintaining several issues merit review. The State argues OSAD's motion to withdraw is proper where there exists no meritorious issues for review. We grant OSAD's motion and affirm the trial court's judgment.

¶ 35                                A. Standard of Review

¶ 36            The Postconviction Act (725 ILCS 5/122-1 *et seq.* (West 2018)) allows a defendant to challenge his conviction for violations of federal and state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471, 861 N.E.2d 999, 1007 (2006). The Postconviction Act provides a three-stage process by which a defendant may obtain relief from the substantial denial of his constitutional rights at trial. *Id.* at 472. At the first stage, the trial court has 90 days to review the petition and may summarily dismiss it if the court finds the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018)). If the petition is not dismissed within the 90-day period, the court must docket it for further considerations. 725 ILCS 5/122-2.1(b) (West 2018)).

¶ 37            At the second stage of proceedings, counsel may be appointed for an indigent defendant. 725 ILCS 5/122-4 (West 2018). After counsel makes any necessary amendments to the petition, the State may move to dismiss the petition. 725 ILCS 5/122-5 (West 2018). The trial court must take all well-pleaded facts in the petition and affidavits as true. *People v. Coleman*, 183 Ill. 2d 366, 380-81, 701 N.E.2d 1063, 1071-72 (1998). If defendant makes a substantial showing of a violation of constitutional rights, he is entitled to a third-stage evidentiary hearing. *Id.* at 381. "To accomplish this, the allegations in the petition must be supported by the record in the case or by its accompanying affidavits." *Id.* The dismissal of a postconviction petition is warranted only when the petition's allegations of fact—liberally construed in favor of the

- 10 -

defendant and in light of the original trial record—fail to make a substantial showing of a constitutional violation. *Id.* at 382. We review *de novo* the dismissal of a postconviction petition where an evidentiary hearing did not take place. *People v. Brown*, 2017 IL 121681, ¶ 24, 102 N.E.3d 205.

¶ 38                                      B. Forfeiture

¶ 39          As an initial matter, OSAD addresses whether defendant forfeited the claims in his second-amended postconviction petition. A postconviction proceeding " 'is not a substitute for, or an addendum to, direct appeal.' " *People v. Rissley*, 206 Ill. 2d 403, 412, 795 N.E.2d 174, 178 (2003) (quoting *People v. Kokoraleis*, 159 Ill. 2d 325, 328, 637 N.E.2d 1015, 1017 (1994)). The scope of a postconviction proceeding is ordinarily limited to constitutional matters involved in the original proceedings that have not been, nor could have been, previously adjudicated. *People v. Blair*, 215 Ill. 2d 427, 447, 831 N.E.2d 604, 617 (2005). The doctrine of *res judicata*, precludes consideration of an issue previously adjudicated on direct appeal. Forfeiture applies to any issue that could have been raised on direct appeal but was not. *People v. Ligon*, 239 Ill. 2d 94, 103, 940 N.E.2d 1067, 1073 (2010). We may relax the doctrines of *res judicata* and forfeiture under circumstances where: (1) the facts relating to counsel's alleged ineffectiveness do not appear on the face of the original appellate record; (2) a defendant can establish appellate counsel was ineffective for failing to raise the issue on direct appeal; or (3) fundamental fairness so requires. *People v. Terry*, 2012 IL App (4th) 100205, ¶ 30, 965 N.E.2d 533.

¶ 40          In his second-amended postconviction petition, defendant alleged (1) ineffective assistance of trial counsel for failing to "challenge the adequacy and validity of the 15-point loci DNA test conducted," (2) ineffective assistance of trial counsel for failing to assert a violation of defendant's fourth amendment right against unreasonable searches and seizures when police

- 11 -

obtained defendant's DNA in Florida and improperly sent it to Illinois to be used in the present case, and (3) that his sentence violated the proportionate penalty and due process clauses of the United States Constitution and Illinois Constitution where his sentence constituted cruel and unusual punishment. We note these claims could have been raised on direct appeal. See *People v. Veach*, 2017 IL 120649, ¶ 46, 89 N.E.3d 366 ("[I]n Illinois, defendants are required to raise ineffective assistance of counsel claims on direct review if apparent on the record.").

¶ 41 However, " 'it is well established that a postconviction claim will not be forfeited where the alleged forfeiture stems from the incompetence of appellate counsel.' " *People v. Youngblood*, 389 Ill. App. 3d 209, 214-15, 906 N.E.2d 720, 725 (2009) (quoting *Blair*, 215 Ill. 2d at 450-51). Because defendant's second-amended petition raised a claim of ineffective assistance of appellate counsel for failing to raise defendant's claims on direct appeal, the claims as to trial counsel's ineffectiveness and the excessiveness of defendant's sentence are not forfeited. Accordingly, we address defendant's claims under the rubric of his ineffective assistance of appellate counsel claim.

¶ 42                    C. Ineffective Assistance of Appellate Counsel

¶ 43 A claim of ineffective assistance of counsel is governed by the familiar framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767. The deficient-performance prong requires a defendant to show counsel's performance was objectively unreasonable under prevailing professional norms. *Veach*, 2017 IL 120649, ¶ 30. The prejudice prong requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." (Internal quotation marks omitted.) *Id.* A defendant must satisfy both prongs to prevail on a claim of ineffective assistance of counsel. *Id.* We review a claim of ineffective assistance of counsel under a bifurcated standard of review. *People v. Nowicki*, 385 Ill. App. 3d 53, 81, 894 N.E.2d 896, 897 (2008). We defer to the trier of fact unless the findings of fact are against the manifest weight of the evidence, but we review the ultimate legal conclusion of whether counsel's actions support a claim of ineffective assistance *de novo*. *Id.*

¶ 44 "Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel." *People v. Childress*, 191 Ill. 2d 168, 175, 730 N.E.2d 32, 36 (2000). Appellate counsel renders ineffective assistance by failing to raise an issue on direct appeal if that failure was objectively unreasonable and the decision prejudiced the defendant. *People v. Easley*, 192 Ill. 2d 307, 328-29, 736 N.E.2d 975, 991 (2000). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *Id.* at 329. "Accordingly, unless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal." *Id.*

¶ 45 1. *Cross-Examination of the State's DNA Expert*

¶ 46 OSAD contends any argument defendant was denied the reasonable assistance of his trial counsel where counsel failed to effectively cross-examine the State's DNA expert would be meritless. We agree.

¶ 47 Generally, the decision whether to cross-examine or impeach a witness is a matter of trial strategy, which does not support a claim of ineffective assistance of counsel. *People v. Pecoraro*, 175 Ill. 2d 294, 326, 677 N.E.2d 875, 891 (1997). "The manner in which to

cross-examine a particular witness involves the exercise of professional judgment which is entitled to substantial deference from a reviewing court." *Id.* at 326-27.

¶ 48 Moreover, defendant's reliance on *People v. Watson*, 2012 IL App (2d) 091328, 965 N.E.2d 474, to argue trial counsel performed deficiently by failing to properly challenge the DNA profile and the conclusions made by the State's expert, is misplaced. In *Watson*, the only evidence connecting the defendant to the crime was a partial DNA match, and defense counsel asked the State's DNA expert only three questions on cross-examination. *Id.* ¶¶ 11-12. Defense counsel did not point out through either cross-examination or argument to the jury that the lack of a complete DNA sample was critical because that missing DNA evidence could exclude the defendant as being the one who committed the crime. *Id.* ¶ 26. The Second District found that defense counsel's representation of the defendant constituted ineffective assistance of counsel because "it was objectively unreasonable for counsel to refrain from pursuing, *in any regard*, a challenge to the *significance*, if any, of the alleged [partial DNA match]." (Emphases in original). *Id.* ¶ 31.

¶ 49 Here, the match to defendant was not a *partial* match; it was a match. This greatly diminishes any purported challenge to statistical probabilities of a random match. Thus, we agree with OSAD that any cross-examination of the State's DNA expert regarding the number of matching loci would have only served to damage defendant's case, and—in light of the relative infrequency with which the DNA profile developed by Aper should appear—trial counsel may have thought it best to devote as little time as possible to this issue. That decision by counsel was a matter of trial strategy immune to a challenge on ineffective-assistance grounds. Because defendant's argument concerning trial counsel's cross-examination of the State's expert is

without merit, defendant suffered no prejudice when appellate counsel failed to raise this issue on direct appeal. See *Easley*, 192 Ill. 2d at 329.

¶ 50                                    2. *Chain of Custody Challenge*

¶ 51            Next, OSAD contends any argument that defendant was denied the reasonable assistance of his trial counsel, where counsel failed to obtain relevant discovery and challenge the chain of custody related to the transport of the Florida DNA sample to Illinois, would be meritless. We agree.

¶ 52            Here, defendant failed to show he suffered prejudice from trial counsel's failure to obtain discovery or challenge the chain of custody related to the Florida DNA sample's transport to Illinois. Instead, defendant simply concluded the Florida DNA sample was improperly transported to Illinois without advancing any legal basis in support of this contention. "Nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the [Postconviction] Act." *Coleman*, 183 Ill. 2d at 381. As OSAD points out, "[defendant] was not developed as a suspect in this case by virtue of the Florida DNA sample's arrival in Illinois." Instead, it was the investigative work by Illinois authorities that led to defendant's arrest.

¶ 53            In June 2007, Florida authorities began investigating the sexual assault of A.C., which took place at her home in Deerfield Beach, Florida, and submitted the DNA profile found on her bedsheets into CODIS. CODIS indicated the DNA profile matched three unsolved sexual assault cases that had occurred between 1993 and 1995 in Champaign and Urbana, Illinois. Upon learning the suspect appeared in Florida, Urbana police officers consulted University of Illinois student directories to find people with connections to Florida. Of the 37,665 students listed in the 1994-95 student-staff directory, 73 students were from Florida. After eliminating female and

Asian students from the list, 54 names remained. Those 54 students were numbered, and the authorities attempted to discern whether they were African American. Student number 13 was defendant, whose out-of-state home address was listed in Deerfield Beach, Florida, the same city in which A.C.'s sexual assault occurred.

¶ 54     The Urbana authorities determined defendant was a student at the University of Illinois in Champaign-Urbana from 1991 through 1995 and, after graduating, remained in the area as a graduate assistant with the university's football team. The 1993 assault took place at 306 E. Michigan, apartment No. 10. At the time, defendant lived in the same building, in apartment No. 7. The February 1995 assault occurred in the Colony West Apartments, where defendant was also living, and the building in which the assault took place was "within sight" of defendant's building. The 2007 Florida assault occurred two houses away from defendant's home.

¶ 55     Even assuming, *arguendo*, trial counsel had obtained and challenged the relevant chain of custody materials, there is no reasonable probability that the outcome of the trial would have been different. See *Veach*, 2017 IL 120649, ¶ 30. The DNA evidence presented at trial was the result of an entirely separate DNA sample obtained pursuant to Illinois Supreme Court Rule 413 (eff. July 1, 1982), and defendant's conclusory allegations are insufficient to warrant an evidentiary hearing on this claim.

¶ 56     Thus, we agree with OSAD that no colorable argument can be made that defendant's trial counsel was ineffective for failing to obtain discovery and challenge the chain of custody related to the transport of defendant's Florida DNA sample to Illinois. Accordingly, appellate counsel could not have been ineffective for failing to raise this issue on direct appeal. See *Easley*, 192 Ill. 2d at 329.

¶ 57                                    D. Excessive Sentence

¶ 58          Finally, defendant argues his 90-year term of imprisonment is so excessive that it

violates the eighth amendment's prohibition against cruel and unusual punishment. U.S. Const.,

amend. VIII. However, OSAD asserts no meritorious argument can be made that the trial court

abused its discretion when sentencing defendant. We agree.

¶ 59          The trial court has discretion when sentencing, and we will not reverse the court's

decision absent an abuse of that discretion. *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d

656. The court is granted such discretion in sentencing because "the trial court is in a better

position to judge the credibility of the witnesses and the weight of the evidence at the sentencing

hearing." *People v. Ramos*, 353 Ill. App. 3d 133, 137, 817 N.E.2d 1110, 1115 (2004). The trial

court errs where the sentence is "greatly at variance with the spirit and purpose of the law, or

manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210,

737 N.E.2d 626, 629 (2000). We presume the sentencing court considered all relevant factors in

aggravation and mitigation unless the record affirmatively reveals otherwise. *People v.*

*Chirchirillo*, 393 Ill. App. 3d 916, 927, 913 N.E.2d 635, 645 (2009). When determining what

constitutes an appropriate sentence, "a defendant's history, character, and rehabilitative potential,

along with the seriousness of the offense, the need to protect society, and the need for deterrence

and punishment" are all considered. *People v. Hernandez*, 319 Ill. App. 3d 520, 529, 745 N.E.2d

673, 681 (2001).

¶ 60          Aggravated criminal sexual assault is a Class X felony, which carries a

non-extended term sentencing range of 6 to 30 years in prison. 720 ILCS 5/12-14(a)(1), (d)(1)

(West 1998); 730 ILCS 5/5-8-1(a)(3) (West 1998). Defendant's sentences were mandatorily

consecutive (730 ILCS 5/5-8-4(a) (West 1998)), making the total sentencing range 18 to 90 years

in prison. Because defendant's 90-year prison sentence falls within the permissible sentencing range, it is presumed to be proper, and we will not disturb the sentence absent an abuse of discretion. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46, 19 N.E.3d 1070.

¶ 61　　　　　Prior to sentencing, the trial court indicated it had considered (1) defendant's PSI, (2) the evidence presented at trial, (3) defendant's statement in allocution, (4) the comments of counsel, and (5) the factors in aggravation and mitigation. Despite recognizing the presence of mitigating evidence, the court found no statutory mitigating factors applied to defendant's case. In aggravation, the court considered defendant's prior criminal history and the need to deter other similarly situated individuals from committing the same type of offense. The court also noted that "if the sentence imposed today gives just one [person] pause to think about what might occur if you do it and get caught, then the deterrent factor has value."

¶ 62　　　　　In light of the seriousness of the offense, defendant's illegal use of a handgun, his criminal history, and the presentation of evidence related to—what the trial court described as— "an unspeakable act of violence against a young woman," defendant's 90-year sentence cannot be viewed as excessive, nor in violation of the eighth amendment's prohibition against cruel and unusual punishment. Thus, we agree with OSAD that no meritorious argument can be made that the trial court abused its discretion at sentencing, and we therefore conclude defendant suffered no prejudice as a result of appellate counsel's failure to raise this issue on direct appeal. See *Easley*, 192 Ill. 2d at 329.

¶ 63　　　　　　　　　　　　　III. CONCLUSION

¶ 64　　　　　For the reasons stated, we grant OSAD's motion for leave to withdraw as appellate counsel and affirm the trial court's judgment.

¶ 65　　　　　Affirmed.